[L. A. No. 2465. Department One.—August 2, 1910.]

JOSEPH M. KINLEY, Appellant, v. E. THELEN and PEOPLES STATE BANK OF NATIONAL CITY, Respondents.

ACCOUNTING—SETTLEMENT BY NOTE GIVEN FOR BALANCE.—Where a balance due upon an unsettled account is fixed by an agreement between the debtor and creditor, and a note is given therefor, the transaction amounts to a settlement of the account, and the debtor, after acquiescing in such settlement, will not, in an action for an accounting, in the absence of a charge of fraud or mistake, be permitted to reopen questions which were then closed.

ID.—EQUITABLE ACTION FOR ACCOUNTING—SALE FOR LESS THAN VALUE—ASCERTAINED DAMAGES.—Where stock held by an alleged trustee as collateral was wrongfully sold by him at less than its value, an equitable action for an accounting to recover the difference will not lie, where the amount of such difference is alleged to be a certain amount, to the knowledge of the plaintiff.

EXPRESS TRUST IN LAND—NON-PAYMENT OF INSTALLMENTS OF PRICE AND TAXES—AGREEMENT FOR TRUST MUST BE IN WRITING.—An action cannot be maintained for the violation of the obligation of an alleged. express trustee of land to make payment of the purchase price thereof and taxes thereon, where the terms of the alleged trust agreement are not in writing.

ID.—NEGLIGENCE OF TRUSTEE IN PERMITTING LOSS OF LAND—FAILURE TO PAY TAXES AND PURCHASE PRICE—PLEADING.—A complaint seeking to hold a trustee liable for the negligent loss of land purchased from the state, by reason of his failure to make the deferred payments required by the certificate of purchase, and for the negligent loss of other lands, by reason of his failure to pay taxes thereon, must specially aver facts showing that the title was lost by want of payments. Such divestiture of title must be averred as fully as would be required in an action in which the plaintiff sought to establish in himself a title resting upon the proceedings to forfeit title for non-payment of taxes or other dues.

ID.—TAX TITLE MUST BE SPECIFICALLY ALLEGED.—Whenever a tax title is specially set forth in a pleading, it is necessary that every fact should be averred which is requisite to show that each of the statutory provisions has been complied with.

APPEAL from a judgment of the Superior Court of San Diego County. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

Hammack & Hammack, for Appellant.

Max Thelen, and Haines & Haines, for Respondent, E. Thelen.

Ward, Wells & Ward, for Respondent Bank.

SLOSS, J.—Demurrers interposed by defendants to plaintiff's second amended complaint, as amended, were sustained, and, leave to further amend not being asked, judgment was given in favor of defendants. The plaintiff appeals from the judgment.

The complaint in question, which is somewhat voluminous, may be summarized as follows: The defendant, Peoples State Bank of National City, is a banking corporation doing business in San Diego County, and the defendant, Thelen, a director of said bank and its cashier and general managing officer. From 1891 to 1906 plaintiff was the owner and holder of sixty shares of the capital stock of the bank and a depositor therein. He was the owner in fee of certain lands, to wit: "320 acres in Uvalde County, Texas, in the Jonathan Golden Survey made in 1848," which land he is unable to describe more definitely; of an interest in a described eighty-acre tract of land in San Diego County, holding a certificate of purchase thereof from the state of California and having made partial payment thereon, and also of four other tracts of land (undescribed) in San Diego County, aggregating three hundred and ten acres. About the year 1892 it was agreed between plaintiff and the defendant bank that the bank should from time to time make loans to plaintiff upon the security of said sixty shares of stock and certain notes and demands owned by plaintiff, as well as the real property above mentioned. It was agreed by plaintiff, Thelen and the bank that Thelen was to be a trustee of both the bank and plaintiff, and the personal property was to be received by him as such trustee, and deeds of the real property should be executed to him as such trustee, but be absolute in form. It was further agreed that Thelen should, as occasion might offer, sell said real estate and apply the proceeds to the payment of plaintiff's indebtedness and that any sums collected on the notes and demands due the plaintiff

should be applied in the same way. It was also agreed that out of the funds so received by Thelen as trustee he should pay the taxes on all said lands and the deferred payments on the eighty-acre tract of land in San Diego. Said agreement was made on the part of said bank by Thelen as its cashier and general managing officer, and the said bank in pursuance of said agreement made the loans as set out. The agreement on the part of the bank to loan said sums and of Thelen to act as trustee, and of the plaintiff to deliver said collaterals and to receive said sums were in parol. Thereupon the plaintiff executed and delivered to Thelen conveyances of all the real estate referred to and plaintiff also delivered to Thelen the notes and demands aforesaid duly indorsed and transferred so as to enable him to collect the same. At the time of making said deeds and turning over said notes and demands plaintiff made a statement in writing addressed to Thelen as cashier of said bank, stating, in substance, that plaintiff turned over said deeds and said notes and accounts as collateral in conformity with the agreement aforesaid. With the exception of said written memorandum the agreement with Thelen and the bank was in parol.

Thereupon the said bank turned over to plaintiff a large sum of money which plaintiff alleges on information and belief to have been about six thousand dollars, and at the same time plaintiff executed and delivered to the bank a note for the sum received by him.

Under the agreement divers sums were collected by Thelen on said notes, accounts, and claims, and from time to time certain of the real estate was sold by him as such trustee, with plaintiff's consent, until all of the tracts comprising the undescribed three hundred and ten acres in San Diego County were sold, and the proceeds received by Thelen for the bank. Plaintiff is unable to state the amounts so received from collections and sales, nor the amounts applied on his indebtedness. Said collections by Thelen and the bank continued for many years until about 1905, plaintiff's indebtedness varying in amount from time to time and credits thereon being made, and new notes being given from time to time "representing the changed accounts of said indebtedness from plaintiff to the bank."

The complaint contains allegations to the effect that plain-

tiff removed from San Diego to San Francisco in 1904, taking
with him his papers and books of account, all of which were
destroyed by fire in 1906, for which reason plaintiff is unable
to give the details of his indebtedness to the bank, but alleges,
on information and belief, that the loans made to him at
various times amounted in the aggregate to twelve thousand
dollars, upon which credits had been made for collections
and sales, until in March, 1905, there was due from plaintiff
to the bank the sum of about forty-eight hundred dollars.
It is averred that the proceeds of the sales of the three hun-
dred and ten acres in San Diego County were properly ac-
counted for by the trustee and the bank, as were the sums
collected on the notes and accounts transferred to Thelen.

About March, 1903, Thelen, "trustee, cashier and managing
officer as aforesaid, and in his capacity as trustee, and as
cashier and managing officer of said bank," informed the
plaintiff that he had not been able to sell the Texas land
nor the eighty acres of San Diego land and that he still held
the title to the same as conveyed to him by the plaintiff, and
requested plaintiff to take a conveyance of said tracts and to
place other securities in their stead with the bank and the
said trustee. The plaintiff, believing and relying upon such
statement, took a quitclaim deed from Thelen conveying said
tracts to him, the plaintiff, and delivered to Thelen as such
trustee ten bonds of the Mexican Anthracite Coal Company,
a corporation, of the value of five thousand dollars, to be
held by such trustee as security for the indebtedness then
unpaid. The plaintiff also executed his renewal note for six
thousand dollars, the amount of his remaining indebtedness,
as represented by Thelen. At the time the two said tracts of
land were so deeded to plaintiff, Thelen as such trustee, cash-
ier, and general managing officer represented to plaintiff that
the title thereto was still vested in said Thelen and that by
such new conveyance plaintiff was being reinvested with the
same title he had held before deeding the lands to Thelen,
and plaintiff accepted and received said deed in reliance upon
said representations.

The plaintiff, however, avers the fact to be that while said
Texas land had been held by Thelen as trustee, Thelen and
the bank "had failed and neglected to pay the state and county
taxes thereon due the county of Uvalde and the state of Texas,

and that on account of said neglect and failure the state of Texas had, by virtue of and under its revenue laws, caused the same to be sold for several years' delinquent taxes, which said defendant failed and neglected to pay as aforesaid; and the said defendant failing and neglecting to pay said taxes, or to redeem said land from said sales, tax-deeds had been made and delivered by the proper officers of the state of Texas to the purchasers at such tax-sales, and title to the land irrevocably passed under such tax-sales and tax-deeds and the plaintiff and said defendant had been finally divested of all interest and title in and to said Texas land." It is alleged, upon information and belief, that the taxes were assessed and levied upon said lands in the years between 1894 and 1900 and that said taxes were unpaid and became delinquent and the land was thereupon, in the year 1899, sold by the tax-collector of Uvalde County, Texas, for such delinquent taxes, and that no redemption was made, whereupon a deed was issued to the purchaser at such sale, all of which was long prior to the reconveyance by Thelen to plaintiff and all of which was well known to said bank and said Thelen at the time of said reconveyance and was not known to plaintiff. It is alleged that said Texas land was at all the times mentioned in the complaint of the value of sixty-four hundred dollars.

It is further averred, upon information and belief, that while the eighty acres of San Diego land was held by Thelen as trustee, the said bank and Thelen failed and neglected to pay each year the state and county taxes due thereon, and failed to make the payments accrued and accruing to the state of California on said land according to the terms of said certificate of purchase. The sum of one hundred and twenty dollars, it is averred, was due on said land at the time of the conveyance by plaintiff to Thelen as trustee. After said conveyance certain payments became due and delinquent upon said contract of purchase, and Thelen as such trustee, although having full knowledge of the maturing of said payments failed and neglected to make any of said payments and by reason thereof the contract became delinquent and subject to foreclosure. "That afterwards by an action in the superior court of San Diego County against the said land and against the said Thelen as trustee and as the owner

and holder of said land, the interest of the said Thelen and of the plaintiff was foreclosed and sold, and the title reverted and revested in the state of California. That the foreclosure was by the usual suit in equity provided by law in such cases. That the complaint was duly filed and the summons issued and served upon the said Thelen, and he having failed to answer or plead to such complaint, such proceedings were had that a decree of foreclosure was made and entered by said court; that said land was sold at a judicial sale according to the decree of said foreclosure and was bid in by the state," whereupon the title became entirely divested from the plaintiff and the defendants and completely vested in the state of California.

The complaint alleges that the land was a part of the school lands of the state and the foreclosure was in the manner provided by law for the foreclosure of delinquent contracts for the sale of school lands, and that the facts of such foreclosure were well known to the defendant and not known to plaintiff. The plaintiff had no knowledge or information that the title to said Texas land and San Diego land had been divested and lost until April, 1905, and he avers that it was well known to Thelen and the bank at the time of the reconveyance to plaintiff that plaintiff had no knowledge of said titles having been so lost and divested.

It is averred that at all times the trustee had in his possession moneys arising from the sales of lands and from collections of notes and accounts sufficient to have made payments of installments and taxes on said San Diego land as they matured, and that at the time the Texas lands were sold for taxes and until tax-deeds were made, they had funds in hand from such collections and sales sufficient to have paid such taxes and to have redeemed from such sales. The plaintiff's interest in the San Diego land foreclosed was, at the time of the foreclosure, of the value of eight hundred dollars.

After the execution of the deeds of reconveyance to plaintiff there remained in the hands of the trustee the said ten bonds of the Mexican Anthracite Coal Company and sixty shares of the capital stock of the Peoples State Bank, which Thelen held as collateral security for the payment of the notes made by plaintiff to the bank for six thousand dollars or thereabouts. At the same time and at all times up to March 8,

1908, Thelen, as such cashier, trustee, and managing officer, was empowered and authorized by plaintiff to sell said sixty shares for not less than nine thousand dollars. About April, 1906, Thelen and the bank sold and turned over to one E. D. Webster the said sixty shares of stock for the pretended sum of six thousand dollars, and said shares were canceled and a new certificate issued in lieu thereof to said Webster. Plaintiff avers that all of said acts were done with the intent to wrongfully divest the plaintiff of his said stock, and plaintiff avers that said directors and said trustee had full knowledge that said stock had a much larger value than six thousand dollars, but notwithstanding this, Thelen and the bank reported to plaintiff that they had sold said shares for six thousand dollars and credited plaintiff with this sum only on his indebtedness. The pretended sale, plaintiff avers on information and belief, was not in good faith to said Webster, but was in fact for the benefit of said bank, and the said shares became the property of said bank. At the time the shares were pledged and delivered to the trustee the certificate for the same was in plaintiff's name and was indorsed by him in blank and the officers of the bank transferred said certificate to Webster, as plaintiff is informed and believes, and divested plaintiff of the title thereto. At the time of said transfer the stock was of the value of ten thousand dollars. It is alleged that the bank and Thelen, as trustee, still holds the said ten bonds of the said Mexican Anthracite Coal Company and also certain notes executed by plaintiff although the plaintiff is not indebted to the defendant bank in any sum. After the discovery by plaintiff of the foregoing facts he made demand on the bank and Thelen as trustee to return the shares of bank stock or pay him the difference between six thousand dollars and the real value of the shares and to return to him the ten bonds of the Mexican Anthracite Coal Company or the value thereof, and to deliver to him the same title to the Texas land and the San Diego land which he had conveyed to Thelen, or to pay him the value thereof, and that a full accounting be had to plaintiff of the said trusteeship and of all the property received thereunder; that the defendants refused to do this or any of the things so demanded. The prayer is for an accounting of such trusteeship, that any balance be delivered and returned to plaintiff, that it be

adjudged that the bank is chargeable with the full value of the bank stock, that the bonds of the Mexican Anthracite Coal Company or their value be returned to plaintiff, that the lands be restored to plaintiff with the same title which he conveyed by the trustee or that said trustee and bank account to plaintiff therefor; that any balance due plaintiff be paid and in case any sum is found to be due the bank from plaintiff, that said sum be ascertained and a proper decree be rendered in relation thereto.

The defendants filed separate demurrers. Each of the demurrers stated the general ground of want of facts and in addition specified a number of particular objections. Some of the more important of these will be mentioned in the course of the discussion.

The complaint contains a mass of averments having no substantial relation to any cause of action that appears. Indeed, it is difficult to extract from the extended narration of the pleading a definite idea of the cause of action which plaintiff intended to set up. The consideration of the various points may be clarified if, adopting the suggestion of one of the respondents, we first undertake to ascertain what causes of action are not stated. In the first place, the complaint does not show grounds for an accounting. While the plaintiff alleges at some length his ignorance of the various items of debit and credit arising during the earlier years of the transactions, it appears that in March, 1903, Thelen represented to plaintiff that his indebtedness was six thousand dollars, and that plaintiff gave his note for such sum. At the same time the lands unsold were reconveyed to plaintiff, and he turned over the ten bonds of the Mexican Anthracite Coal Company. These bonds, with the sixty shares of bank stock, remained in Thelen's hands as security, and, apparently, as the sole security, for the six-thousand dollar note. Indeed, the plaintiff expressly avers that the trust was properly executed so far as the three hundred and ten acres of San Diego land and the notes and accounts were concerned. There is no averment that any part of the indebtedness represented by the six-thousand-dollar note has ever been paid. There appears, therefore, to be no occasion for an accounting. Plaintiff's debt, was, in 1903, fixed by the agreement of the parties, and certain security for that debt was then given, or had

theretofore been given. Whatever uncertainty may have ex-
isted regarding the earlier dealings of the parties, all doubts
were resolved by the giving of the last note. This transaction
constituted a settlement of account between the parties, and
the plaintiff, after acquiescing in that settlement, will not,
in the absence of a charge of fraud or mistake, be permitted
to reopen. questions which were then closed. No such charge
is made. Furthermore, there is no allegation that the state-
ment of Thelen concerning the amount of plaintiff's indebted-
ness was not, in fact, entirely correct. Nor does there appear
to be any occasion for an accounting with respect to the bank's
dealings with the security following the giving of the six-
thousand-dollar note. The amount of damage sustained by
reason of the wrongful sale of the bank stock is not unknown
to plaintiff. He alleges that the shares were worth ten thou-
sand dollars and that they were sold for six thousand dollars.
If this sale was unauthorized, the damage was four thousand
dollars.

Again, if the intent of the pleader was to seek redress for
the violation of the trustee's obligation to make the deferred
payments on the San Diego school land, and to pay taxes on
this and the Texas land, the complaint does not state a cause
of action in this behalf. These lands were conveyed to Thelen
by a deed absolute. The agreements of Thelen and the bank
were, it is expressly averred, in parol. The only writing was
one signed by the plaintiff. But no express trust in relation
to real property is valid unless created or declared: "1. By
a written instrument, subscribed by the trustee, or by his agent
thereto authorized by writing;" or "2. By the instrument
under which the trustee claims the estate affected." (Civ.
Code, sec. 852.) The mere conveyance of the land imposed
upon the defendants no duty to make payments of taxes or
other claims against the land. The foundation of that duty
was the agreement of trust. Such agreement, being in parol,
is not enforceable in the absence of a statement of facts giving
rise to an implied or constructive trust. (*Barr* v. *O'Donnell*,
76 Cal. 469, [9 Am. St. Rep. 242, 18 Pac. 429]; *Feeney* v.
*Howard*, 79 Cal. 525, [12 Am. St. Rep. 162, 21 Pac. 984];
*Hasshagen* v. *Hasshagen*, 80 Cal. 514, [22 Pac. 294]; *Babcock*
v. *Chase*, 111 Cal. 351, [43 Pac. 1105]; *Sheehan* v. *Sullivan*,
126 Cal. 189, [58 Pac. 543].) A further objection to the

complaint, viewing it as one based on the failure of the defendants to protect plaintiff's title in the San Diego school lands and the Texas land, is the want of sufficient averments that the title was lost by want of payment. No injury accrued to plaintiff unless the title was divested in consequence of Thelen's neglect. It was necessary, therefore, for plaintiff to show such divestiture as fully as he would have been required to do if he had been seeking to establish in himself a title resting upon proceedings to forfeit title for non-payment of taxes or other dues. "Whenever a tax title is specially set forth in a pleading, it is necessary that every fact should be averred which is requisite to show that each of the statutory provisions has been complied with." (*Russell* v. *Mann,* 22 Cal. 131; see, also, *Himmelman* v. *Danos,* 35 Cal. 441; *Perine* v. *Forbush,* 97 Cal. 305, 309, [32 Pac. 226].) So far as the tax-sales are concerned the complaint states no facts, but only conclusions of law, purporting to show the validity of the proceedings which, as plaintiff claims, took away the title to the lands. With respect to the foreclosure of the San Diego lands at the suit of the state, the recovery of a judgment is alleged, but its date is not given, nor is there any averment that it has or had at the time of the reconveyance, become final. (This objection is made a ground of special demurrer by one of the defendants.)

The failure to properly show a loss of title furnishes, further, an answer to the claim that the complaint sets forth a cause of action for damages for the fraud committed in representing to plaintiff that the title to the Texas and San Diego lands held by Thelen was the title which had been conveyed to him. An essential part of such action is an averment of the falsity of the representation relied upon.

The only causes of action alleged, if any, are, then, one for the recovery from Thelen of the ten bonds of the Mexican Anthracite Coal Company, held as security for a debt which has been paid, and one for damages for the wrongful sale of the sixty shares of bank stock. The latter is stated in a confused way, leaving it doubtful whether the plaintiff relies upon a sale to Webster for a sum less than the real value, or upon a pretended sale to the bank itself. The demurrers, which specify a great many objections, point out this defect. In addition, the demurrers are directed to a number of other

grounds of criticism of the complaint. It will not be necessary to discuss these in detail. The analysis already made will sufficiently show that there is an almost hopeless jumble of allegations of facts, many of which are immaterial to any cause of action stated, with conclusions of law. The demurrers were clear and direct in pointing the attention of court and counsel to the uncertainties, misjoinders of causes of action, and other defects in the pleading. The complaint required radical amendment before it could conform to the code requirement that it should contain "a statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., sec. 426.) The original complaint had already been followed by a first and a second amended complaint, and the second had itself been amended. It appears that leave to further amend was not asked. Under these circumstances, we are satisfied that the court below was justified in sustaining the demurrers, and, having sustained them, in ordering judgment in favor of the defendants.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.