[L. A. No. 13679.   In Bank.—October 29, 1935.]

JOHN WORK et al., Respondents, v. COUNTY NATIONAL BANK AND TRUST COMPANY OF SANTA BARBARA (a Corporation), Appellant.

Griffith & Thornburgh, William G. Griffith, Flint & MacKay and William A. Bowen for Appellant.

O'Melveny, Tuller & Myers, Homer I. Mitchell and Lucien W. Shaw, as *Amici Curiae* on Behalf of Appellant.

C. F. Lacey for Respondents.

THE COURT.—Defendant trust company appeals from a judgment against it and in favor of plaintiffs in the sum of $25,589.38, plus interest. The action is based on the theory that appellant violated the terms of a trust, to respondents' damage in the above amount.

In 1919 respondents granted to one McRae an option on certain lands then owned by respondents in Monterey and San Luis Obispo Counties. McRae immediately assigned this option to the Associated Almond Growers of Paso Robles, hereafter referred to as the Association. Subsequently, the lands mentioned in the option were conveyed by respondents to the predecessor in interest of appellant, in trust. Generally speaking, the duty of the trustee, as set forth in the respective declarations of trust, was to receive from the Association, as buyer, the purchase price of the land and to remit the same to the respondents, as sellers. The Association was subdividing the large area involved. The trust provided that in the event the Association failed to buy the entire tract the balance should be reconveyed to respondents. The trust also provided

that two certain springs located on the tract, together with certain buildings located on the area surrounding the springs, constituting in all ten acres, were to be reserved by the trustee until the Association had paid the full purchase price, and to be conveyed to the Association only upon the trustee receiving the full purchase price.

It is the theory of respondents that the full purchase price of the tract was $253,305 and that after the appellant collected from the Association and paid to respondents the sum of $227,715.62, the appellant, in violation of its trust, conveyed to the Association the reserved lands, without first collecting the balance of $25,589.38. The trial court found in respondents' favor on this theory. The respondents first sued the Association for the balance claimed to be owing to them, and recovered judgment in the exact amount of the judgment in this case. The judgment against the Association was affirmed on appeal. (*Work* v. *Associated Almond Growers,* 102 Cal. App. 232 [282 Pac. 965].) This action was then instituted against the appellant as trustee. The judgment in this case specifically provides that upon its payment appellant shall be entitled to an assignment from respondents of the judgment against the Association.

The controversy arose because of the ambiguous description of the property contained in both the option and declaration of trust. In the declaration of trust, the property is referred to as the property *owned* by John and Mattie Work in San Luis Obispo and Monterey Counties, as set forth in the McRae option, containing "approximately six thousand acres". Under the terms of the trust agreement, the property was divided into five parcels. To prevent the purchaser from selecting only the better portions of the ranch and leaving the poorer portions, the purchaser was required to take these parcels in a particular order. Each parcel was described separately in the trust agreement. Each of the first four parcels was described as that portion "of said tract of 6000 acres of land" owned by John and Mattie Work, lying in various directions from certain named section lines and county roads. Parcel 5 was described as "all that part of said tract of 6000 acres remaining after the selection of the foregoing described parcels".

It is conceded that at the time of the execution of the option and declaration of trust the property *owned* by re-

spondents in the two counties named was considerably less than 6,000 acres, but before the option was exercised respondents acquired record title to 6,028.15 acres, all part of one tract known as Independence ranch. It is respondents' contention that this total acreage was covered by the option and trust agreements. Appellant contends that it relied on the statement of ownership found in the trust agreement and that only land then owned by respondents was included.

At the time the declaration of trust was executed, the respondents had record title to but about 5,100 acres of Independence ranch, but embraced within the exterior boundary fences of the ranch, and in respondents' possession for many years, were parcels of land standing in the names of Pence, 160 acres, Collyer, 80 acres; 80 acres of unpatented government land, and 597.68 acres in the name of Robert Work, son of respondents. Shortly after the option was given to McRae, respondents perfected their title to these various parcels. As already stated, for many years prior to the giving of the option, all of the above lands were in the possession of respondents and were included within the boundary fences of the ranch. The 597.68 acres standing in the name of Robert Work were what the parties describe as ''good'' land, while the other 320 acres were not good land. The evidence shows that from the very inception of the trust disputes arose between respondents, the Association, and appellant as to just what land was included within the trust. The Association wanted the Robert Work land, but did not want the other 320 acres. Respondents took the position that if the 320 acres were excluded by reason of the recital of ownership, so must the 597.68 acres belonging to Robert Work, and that if Robert Work's land was included, so must the 320 acres be included. The trust officer of appellant not only knew of this dispute but participated with the disputing parties and their attorneys in many conferences, where the matter was fully discussed. The Association ultimately determined to accept the full 6,000 acres. That was the express holding in the case of *Work* v. *Associated Almond Growers, supra.* The record discloses that appellant was fully cognizant of respondents' position and was fully aware of the respective positions taken by the Association and respondents. In spite of this, however, after the appellant had received from the Association what, according to its figures, was the full purchase price of the

tract, not including the 320 acres, it conveyed to the Association the reserved lands. Immediately after the reserved lands had been conveyed to the Association, it reconveyed the property involved, and other property, back to appellant to secure a $500,000 bond issue, sold to the public. Without further recounting of the facts, we are convinced that the findings of the trial court to the effect that the Association exercised its option to buy the entire tract; that as interpreted by the parties, including appellant, the lands conveyed by respondents to appellant included the disputed 320 acres; and that appellant, in violation of its trust obligations, conveyed to the Association the reserved properties without first securing from the Association a balance of $25,589.38 then due and owing to respondents, are all amply supported by the record. The oral testimony, as well as the contemporaneous correspondence, amply supports those findings.

The main question involved on this appeal and the main reason that a hearing was granted in this case, is to determine what the proper measure of damages is, under such circumstances. On this question, it is appellant's contention that it never deeded the 320 acres to the Association, but violated the trust only in deeding the reserved lands, and that its only duty is to quitclaim these 320 acres back to respondents and pay them the value of the reserved properties. It is further the contention of appellant that if it is liable for the 320 acres, the measure of damages is not the price agreed to be paid by the purchaser (which was the theory of the trial court) but the value of the land. Respondents contend that the measure of recovery is the agreed purchase price. After a thorough review of the authorities, we are of the opinion that where a trust company holds property in trust upon its agreement to convey to a purchaser upon the payment of a designated price and, in violation of its trust, it conveys the property to the purchaser without recovering that price, it is liable in damages for the agreed price. This rule seems to us both logical and fair. For purposes of illustration, suppose an owner of land believes his property to be reasonably worth $10,000. He enters into a contract to sell the lands to X for that sum. The owner deposits a deed in trust with the trust company, upon the latter's express agreement to hold the deed until it receives the full $10,000. After the trust company has received $5,000, in direct violation of the trust instruc-

tions, it conveys to X, who immediately reconveys to a *bona fide* purchaser. When the trust company is sued, can it be permitted to contend successfully that the land was worth but $5,000 and that, therefore, the seller has not been injured by the acts of the trust company, and that the seller is relegated to an action against the purchaser for the agreed price? To state the proposition thus baldly is to refute it. Elementary principles of fair dealing require the trust company to pay the seller, under such circumstances, the damages caused by its acts. That damage can only be the agreed purchase price. Unless this is so, there would be no reason for placing deeds in trust or in escrow. (*Keith* v. *First National Bank,* 36 N. D. 315 [162 N. W. 691, L. R. A. 1917E, 901], is squarely in point. See, also, *Muenz* v. *Bank of Bowdle,* 47 S. D. 342 [198 N. W. 710]; *Stone* v. *Jarbalo State Bank,* 107 Kan. 332 [190 Pac. 1094].) In each of these cases it was held that where deeds are deposited in trust with a trustee, together with definite instructions concerning delivery of such deeds, and specifying the exact amount of money to be received by the trustee before he shall deliver the deeds, and the trustee delivers the deeds in violation of such instructions, without receiving the amount so specified, such trustee is liable for the purchase price as fixed in the instructions. We do not believe that section 2237 of the Civil Code, relied on by appellant, declares a different rule in this state. That section provides:

"A trustee who uses or disposes of the trust property, contrary to section two thousand two hundred and twenty-nine, may, at the option of the beneficiary, be required to account for all profits so made, or to pay the value of its use, and, if he has disposed thereof, to replace it, with its fruits, or to account for its proceeds, with interest."

In the first place, both North Dakota (sec. 6290, Civ. Code of North Dakota) and South Dakota (sec. 1204 of the Compiled Laws of South Dakota, 1929 ed.) have statutory provisions similar to the one above quoted and yet, in the two cases above cited, the courts reached the result indicated. The alternative remedies given to the beneficiary by section 2237, *supra,* are all aimed to make the beneficiary whole, and the only way that that can be done in the present case is to permit respondents, as beneficiaries, to recover the full purchase price. The reserved properties cannot be replaced. They

have been conveyed away and are now security for a bond issue sold to the public. The only way the trust properties can be "replaced" is to permit the respondents to receive what they would have received had appellant been faithful to its trust.

The California cases relied on by appellant are not in point. None of them involves a trust with definite instructions as to collection of a fixed price. Obviously, cases involving involuntary trusts, or cases where a trustee disposes of trust property in violation of an express trust where the trust agreement does not fix the value of the trust property as agreed to by the parties, are not in point. One such case relied on by appellant is *Kinley* v. *Thelen*, 158 Cal. 175 [110 Pac. 513, 516]. The case arose on demurrer. The complaint alleged that plaintiff had deposited with Thelen, cashier of a bank, certain stocks, bonds and deeds to real property, Thelen to hold the same in trust, with power of sale, for the bank, to secure an indebtedness of plaintiff to the bank. As to the stock, the agreement, as alleged, was that Thelen was not to sell the stock "for less than nine thousand dollars". The complaint alleged that when the stock was of the value of ten thousand dollars, it was sold by the trustee for six thousand dollars. The court properly held that under such conditions "if this sale was unauthorized, the damage was four thousand dollars". This seems self-evident and not at all analogous to the problem here presented. Obviously the $9,000 provision did not mean that the trustee could sell at that price, if the market value was more than that figure. Obviously the trustee was, under the provisions of the trust, to sell the property at market value, but not less than $9,000.

*Clapp* v. *Vatcher*, 9 Cal. App. 462 [99 Pac. 549], relied on by appellant, is not in point. There an insane man conveyed certain real property to defendant, who resold the same. Plaintiff brought the action as legatee of the property under the will of the testator, made while the latter was sane. Obviously, under the express provisions of section 2237, of the Civil Code, above quoted, the beneficiary of the involuntary trust had the statutory right to recover the fruits of the resale. We have read the other California cases cited by the appellant and find none of them in point. It is true that in some of the cases from other jurisdictions referred to by appellant there is to be found language indicating that in some states a rule

contrary to the one here enunciated prevails. For reasons already stated, we believe that the rule herein declared is the proper one.

From what has been said, it is clear that respondents cannot be compelled to accept a quitclaim of the 320 acres from appellant, nor the value of that land, plus the value of the reserved lands. To require respondents to accept either of these alternatives would not be to make respondents whole for the damage caused by appellant's breach of its trust.

■ The next point urged by appellant is that the court erred in admitting into evidence the judgment roll in the action against the Association, in which case the Association was held by its actions to have interpreted its agreement as including the 320 acres. We think this was not error. Under the circumstances of this case, proving the acts of the Association was one step in the proof of respondents' case. We think that the judgment roll was admissible to show how the Association and respondents had interpreted the contract, and that when this appellant was shown not only to have known of the dispute but to have actively participated therein, the matter was sufficiently connected up. However, even if the judgment roll was improperly admitted, it would not constitute reversible error. As already pointed out, the evidence, other than the judgment roll, and other than John Work's testimony as to the acts of the Association, is ample to support the basic findings above set forth. In fact, in our opinion, the other evidence is such that even without the questioned evidence, the trial court could not, reasonably, have reached any other conclusion than the one reached by it. Under such circumstances, the beneficent provisions of article VI, section 4½, of the Constitution, are applicable.

■ Appellant also urges that the second count of the amended complaint is barred by the statute of limitations. The original complaint, containing but one count, was filed well within the statutory period. In this count, the trust is alleged, and then it is alleged that appellant has received the full purchase price and has failed to remit a portion thereof to respondents. The amended complaint, filed, according to appellant, after the statute of limitations had run, in the first count, sets forth practically the same allegations contained in the original complaint. The second count alleges the conveyance of the reserved properties to the Association, before the

appellant received the full purchase price. We are of the opinion that the second count does not state a new cause of action. On this point, we are in accord with the concurring opinion of former Presiding Justice Conrey, of the District Court of Appeal, Second District, Division One, written in this cause when it was pending before that court. We therefore adopt that opinion as part of the opinion of this court. It is as follows:

"It must be admitted that the second count of the amended complaint is different from the first complaint in some details of statement of the alleged transactions. Yet the nature of the cause of action, the foundational facts of the trust, and the failure of the trustee to perform the duties assumed by it as such trustee, are of the substance equally of both counts. The cause is of equitable jurisdiction, although the remedy happens to assume the form of a money judgment. To uphold the defendant's plea of the statute of limitations, it would be necessary to treat the second count of the amended complaint as setting up a new and separate cause of action at law, without regard to the equitable rights involved and which at all stages of the action were an essential part thereof. But the pleadings do not justify such interpretation."

To these conclusions we add the following observation: An analysis of the amended complaint makes it perfectly clear that both counts set forth but one primary right of plaintiffs that has been invaded by but one wrong on the part of defendant. The evidentiary facts under the two counts stated might be different, but that does not necessarily mean that more than one cause of action has been stated. Under the better reasoned cases, when a complaint alleges but one primary right and one wrong, but one cause of action has been stated. (*Frost* v. *Witter*, 132 Cal. 421 [64 Pac. 705, 84 Am. St. Rep. 53]; *McKee* v. *Dodd*, 152 Cal. 637 [93 Pac. 854, 125 Am. St. Rep. 82, 14 L. R. A. (N. S.) 780]; *Hurt* v. *Haering*, 190 Cal. 198 [211 Pac. 228].)

We have examined the other points urged by appellant and find that they are without merit.

The judgment appealed from is affirmed.

Rehearing denied.