[Civ. No. 13753.　Second Dist., Div. One.　Oct. 30, 1942.]

O. R. DIBBLEE et al., Appellants, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), Respondent.

Wm. L. Baugh, Jr., Hill, Morgan & Bledsoe and Charles P. McCarthy for Appellants.

O'Melveny & Myers, Pierce Works and W. B. Carman, Jr., for Respondent.

THE COURT.—This is an appeal from a judgment for defendants, entered after a motion for nonsuit was granted at the close of plaintiffs' case. The action was one brought

by the named plaintiff on behalf of himself and some five hundred other people who owned investment certificates or contracts issued by National Thrift Corporation of America and secured as to payment of cancellation value thereof by a trust agreement entered into by said corporation with the defendant and respondent Title Insurance and Trust Company as trustee. A copy of the trust agreement was annexed to and made a part of the complaint. Prior to the commencement of this action a federal equity receiver was appointed for National Thrift Corporation.

The basis for the action herein is set forth in the following paragraphs of the complaint, as amended prior to the trial:

## "X

"That under the terms of said trust indenture, Exhibit 'A', and particularly the provisions of Section 2 of Article IV, and Section 2 of Article III, thereof, it is provided that at all times there should be paid into said trust by said National Thrift Corporation of America, in cash or securities, an amount equal in face value to 110 percent of the cancellation value of the outstanding certificates of said National Thrift Corporation of America, and it is further provided that the defendant, Title Insurance and Trust Company, as trustee of said trust, shall not identify or certify any certificates or contracts to be issued by said National Thrift Corporation of America at any time when said National Thrift Corporation of America is in default in the respect that said National Thrift Corporation of America has not paid into said trust, in cash or securities, an amount equal in face value to 110% of the cancellation value of such outstanding certificates or contracts. It is further provided by said trust indenture, Exhibit 'A', and particularly by the provisions of Sections 1 and 2 of Article III thereof, that no participation certificate or contract shall be secured by said trust indenture or entitled to any security, right, or benefit thereunder, or be valid for any purpose whatsoever, and that no participation certificate or contract shall be delivered by said National Thrift Corporation of America under said trust indenture, until and unless such participation certificate or contract is identified and certified by defendant Title Insurance and Trust Company. Plaintiff is informed and believes and there-

fore alleges that at various times during the active operation of said trust, and extending down to the time when said trust ceased to be operated as an active trust by reason of the appointment of said receiver for said trust estate, March 17, 1933, the defendant Title Insurance and Trust Company in violation of the terms of said trust agreement, identified and certified certificates to be issued by, and which were issued by, said National Thrift Corporation of America, at various times when said National Thrift Corporation of America, to the knowledge of said defendant, was in default in the respect above mentioned in that it had not paid into said trust, in cash or securities, an amount equal in face value to 110% of the cancellation value of the participation certificates which it had issued and which were outstanding. Plaintiff is informed and believes and therefore alleges that on September 8, 1932, the cancellation value of the participation certificates of said National Thrift Corporation of America then outstanding was $294,874.69, and 110% thereof was $324,362.15, as fixed by the terms of said certificates; that as a result of said acts of the defendant Title Insurance and Trust Company in certifying and identifying certificates of said National Thrift Corporation of America at a time when said corporation had not deposited in said trust cash or securities in an amount equal in face value to 110% of the cancellation value of the outstanding certificates, there were in said trust estate on September 8, 1932, assets of a face value of only $251,009.15, whereas there should have been in said trust estate at said time assets of a face value of $324,362.15, and that the difference between the face value of the assets which should have been in said trust at said time and the face value of the assets which were in said trust at said time was $73,353.00; that upon the appointment of defendant Frank C. Mortimer as receiver of said trust of defendant Title Insurance and Trust Company, as set forth in Paragraph VII of this complaint, the defendant Title Insurance and Trust Company, as trustee, turned over and delivered to said receiver, as the assets of said trust, assets of a face value of only $251,009.15, instead of assets of a face value of $324,362.15 which should have been in said trust estate; that the cancellation value of the certificates of said National Thrift Corpora-

tion of America held by the plaintiffs in this action exceeds by more than the amount of $73,353.00 the value of the assets held by defendant Title Insurance and Trust Company under said trust B-5918 and turned over by said defendant to said receiver, and the amount which can be realized thereon.

## "XI

"That by reason of the failure of defendant Title Insurance and Trust Company to comply with the provisions of said trust agreement, as aforesaid, and its said acts in certifying participation certificates of said National Thrift Corporation of America at a time when said National Thrift Corporation of America had not deposited in said trust cash or securities equal in face value to 110% of the cancellation value of the outstanding certificates, and by reason of the failure of said defendant Title Insurance and Trust Company to have in said trust and turn over and deliver to the defendant Frank C. Mortimer as receiver of said trust, assets of a face value of $324,362.15, as required by said trust, and by reason of the act of said defendant Title Insurance and Trust Company in turning over and delivering to the defendant Frank C. Mortimer as receiver of said trust assets of said trust of a face value of $251,009.15 instead of assets of a face value of $324,362.15, the above named plaintiff and all other of said holders of said certificates of said National Thrift Corporation of America are damaged in the sum of $73,353."

The complaint prayed judgment for $73,353, "or any sum that may be found due by the court under said trust," and for such other and further relief as to the court might seem meet and proper.

The record reveals that on the date of the last authentication of certificates by respondent trustee the trust liability (i.e.: the minimum amount that should have been in trust) was $219,539.98, while there was actually held in trust at that time securities of a face value of $302,019.32. At the termination of respondent's trusteeship respondent trustee had on hand and turned over to the federal equity receiver assets of a face value of only $251,364.47, which was less than the trust liability as of that time.

At the trial appellants sought to question a witness as to whether, after the last certification of certificates, there were

not substitutions made from time to time in the securities held in trust. To this question respondent interposed an objection upon the ground that such a question was entirely incompetent, irrelevant and immaterial. After argument upon the point the question was withdrawn and appellants asked leave to amend their complaint to include allegations charging respondent with permitting improper withdrawals from the trust funds. Leave to so amend was denied, the trial judge stating: ''I cannot escape the conclusion that you are attempting to assert a new and different cause of action under which you must inevitably be asking, and resulting in an accounting of this whole trust.'' Appellants attempted no further inquiry along the line thus sought to be introduced and made no offer of proof in this respect. At the close of plaintiffs' case a motion for nonsuit was granted.

The record also reveals that an expert witness, an accountant, testified that the only explanation found for the discrepancy between the amount of assets turned over by the trustee and the amount of the actual trust liability was the manner in which a certain formula had been applied by accountants for National Thrift Corporation in calculating the amount of securities required to be deposited in trust.

Under the trust agreement it was the duty of the National Thrift Corporation to deposit the required amount of security in trust. The agreement also contained the following clauses, all included in article IX thereof, under the heading ''Concerning the Trustee'':

''Section 2. The Trustee shall be fully protected in, and shall incur no liability for acting upon, any notice, request, consent, certificate, affidavit, statement, resolution, or other paper or document believed by it to be genuine and to be signed or certified to by the person therein stated to be familiar with the facts therein set forth. The Trustee may in its sole discretion require any such instrument, paper or document to be sworn to, before its acceptance thereof or before any duty shall devolve upon it to act thereon.''

''Section 12. All recitals herein contained are made solely by and on behalf of the Corporation (National Thrift Corporation of America) and the Trustee assumes and shall be charged with no responsibility whatsoever as to the correctness of any statements herein contained. The Trustees shall

have or be charged with no responsibility as to the validity of this instrument, as to the execution or acknowledgment thereof, *or as to the amount or extent of the security afforded by the property deposited and pledged and to be deposited and pledged hereunder,* and shall not be liable in any way for the consequences of any breach on the part of the Corporation of any of the covenants herein contained.'' (Italics supplied.)

''Section 14. The certificate of the Corporation under its corporate seal, executed by its president, and attested by its secretary, shall be, except where otherwise expressly provided in this instrument, at any and all times sufficient evidence for all the purposes hereof, of the existence or non-existence of any fact or as to the necessity or expediency of any particular action, dealing or transaction, affecting, arising under or in any way connected with this instrument or with the trusts hereby created; and the Trustee shall be entitled to and may at all times accept and rely upon such certification, except where otherwise expressly provided in this instrument, without any other or further evidence of the facts or matters therein set forth. The Trustee, in its discretion, may require that any such certificate in addition to such attestation, be sworn to by the president of the Corporation.''

Appellants contend that in any event they had established a prima facie case, that the proposed amendment to the complaint was unnecessary and that the court therefore erred in granting a nonsuit. Appellants further contend that if the proposed amendment to the complaint were necessary the court erred in refusing to permit the amendment, arguing that the power of the court to permit amendments should be liberally allowed in advancement of justice and that the amendment sought did not inject a new or different cause of action but simply constituted an enlargement or variation of the cause of action stated in the complaint.

It may at once be seen that the charge that the respondent trustee had permitted an *over issue* of certificates was not substantiated, since it was shown that at the time of the last identification or authentication of certificates there was on deposit in the trust a sufficient amount of securities to cover the trust liability thereby created. Nevertheless, appellants argue that it was incumbent upon the trustee to explain the shortage of assets existing at the time the trustee turned over the trust fund to the federal receiver; that such a shortage hav-

ing been revealed by the evidence, a prima facie case of a breach of trust had been established. Such an argument overlooks the plain terms of the trust agreement as set forth in the complaint by annexation and reference. Respondent properly points out that but two duties devolved upon the trustee under the trust, namely: Under section 2 of article III, a duty not to authenticate certificates when the trustor was *to the knowledge of the trustee* in default. Under section 3 of article VI, a duty not to permit withdrawals or releases of the security while the trustor was *to the knowledge of the trustee* in default. In this connection, section 1 of article VI of the trust agreement reads as follows: "Unless some one or more of the events of default by the Corporation as hereinafter defined shall have occurred, which default or defaults shall have come to the Trustee's knowledge, the Trustee from time to time upon the written request of the Corporation, but subject to the provisions, conditions and limitations in this instrument set forth, and not otherwise, shall release from the lien and operation of this instrument any part or parts of the trust estate." It becomes obvious, therefore, that a mere showing of a shortage of assets at any given time would be insufficient to substantiate a charge of a breach on the part of the trustee. The trustee was entitled by the terms of the trust to rely upon the statements of the trustor as to the amount of security required, and hence could not be held liable for a shortage in that respect without proof that the shortage had been brought to the knowledge of the trustee. Appellants failed to allege any such knowledge and offered no evidence thereof, and no prima facie case of a breach of the trust was established in any event.

In discussing the propriety of the trial court's action in denying appellants leave to amend the complaint at the trial, it is pertinent to point out that the record shows the federal receiver for National Thrift Corporation to have been appointed September 8, 1932; that the complaint in the present action was filed on September 8, 1936; that this action was not brought to trial until February 4, 1942. It should also be pointed out that the question is not one of judicial error but one involving the sound discretion of the court.

*Work* v. *County National Bank, etc. Co.,* 4 Cal.2d 532 [51 P.2d 90], strongly relied upon by appellants, is of little help

here. That case discussed the question of whether an amended complaint, filed after the statute of limitations had run, set up a new cause of action in a second count. Actually, the question presented in the case at bar, in this respect, is whether the court abused its discretion in denying leave to amend during the trial, which question does not necessarily depend upon a determination as to whether the proposed amendment set up a new cause of action, although the trial court was of the view that the amendment stated a new and different cause of action requiring an accounting of the entire trust. *Born* v. *Castle*, 22 Cal.App. 282 [134 P. 347], also cited by appellants, supports the contentions of respondent rather than those of appellants. There a proposed amendment made at the trial was refused by the trial court, which refusal was held on appeal to have constituted an abuse of judicial discretion. But in that case leave to amend the complaint was asked in order to conform to proof given by the 'defendant of a fact known to defendant and unknown to the plaintiff until presented in evidence; and the rule there stated in the opinion, as to amendments during the course of trial, and the tests there suggested for determining the propriety thereof, uphold the action of the trial court here in refusing to allow the proffered amendment. It should also be noted that the record in the case at bar reveals that the amendment proposed was not made to conform to any proof or evidence introduced by either party.

Briefly, the situation here is one in which appellants charged the respondent trustee with creating the "shortage of assets" by improperly authenticating the issuance of certificates. When it was shown at the trial, upon presentation of appellants' own case, that the trustee had not breached the trust in this respect, appellant then proposed to try the case on a charge that the trustee had created the "shortage" through improperly allowing withdrawals from the fund held in trust. In other words, upon discovering that appellants' first charge as made was unfounded, appellants then proposed to make a new charge of a different type of breach; and this proposal was made during the course of a trial held almost ten years after the active operation of the trust had ceased and nearly six years after the action for a breach of the trust had been instituted. Moreover, the nature of the case and the record presented would indicate that the true situation, disclosed by

appellants' own evidence, might have been discovered and the defect, if any, in appellants' case, as presented by the pleadings, remedied before so long a time had elapsed. It cannot be said that an amendment of the type offered, at the time it was offered, would not prejudice the defendant. It is also reasonably clear that the amendment in question changed the scope of the issues to be decided; and that in all probability the amendment would necessitate a continuance of the cause by reason of the apparent extent of the accounting required. In view of such circumstances, coupled with the unusual length of time the action had been pending, it cannot be held that the trial court abused its discretion in refusing to grant leave to amend as requested at the trial. (See 21 Cal. Jur. 191, § 133, and cases cited.) ''The rule that the amendment of a pleading immediately before or during a trial is not a matter of right but is placed within the sound discretion of the trial judge is too well established to need the citation of supporting authorities. It is equally well established that an appellate court will not interfere with the action of the trial judge unless it clearly appears that there has been an abuse of discretion. It is also true that the exercise of this discretion must be sound and reasonable and not arbitrary nor capricious. To a certain extent the measure of the soundness of the discretion used must be found in the facts of each case.'' (*Richter* v. *Adams*, 43 Cal.App.2d 184 [110 P.2d 486], at 187; also see *Hagar* v. *Home Stores, Inc.*, 85 Cal.App. 533 [259 P. 1007].) Measured by the facts of the case at bar the trial judge exercised sound discretion in the situation presented.

The foregoing discussion of the propriety of refusing leave to amend the complaint is of course based upon an assumption that such an amendment was necessary to enable appellants to proceed with their action. If such an amendment were not necessary, that alone would have justified the trial court in refusing to permit it under the circumstances presented.

The judgment is affirmed.

Appellants' petition for a hearing by the Supreme Court was denied December 28, 1942.