Argued April 9, decided April 23, 1912.

## BOARD OF MEDICAL EXAMINERS *v.* EISEN.

[123 Pac. 52.]

PHYSICIANS AND SURGEONS—REVOCATION OF LICENSE—COMPLAINT.

1. Section 4734, L. O. L., provided that the term "unprofessional or dishonorable conduct," as applied to physicians, means the procuring, or aiding and abetting in procuring, a criminal abortion. Section 4735, provides that a complaint, under oath must be filed, charging the acts of unprofessional or dishonorable conduct in ordinary and concise language. A complaint accused a physician of unprofessional and dishonorable conduct in wrongfully and unlawfully aiding and abetting and procuring a criminal abortion, without other description of the act. *Held*, that the complaint alleged a mere conclusion, and · was insufficient.

APPEAL AND ERROR—QUESTIONS REVIEWABLE.

2. An objection that a complaint does not state a cause of action may be urged for the first time on appeal.

PHYSICIANS AND SURGEONS—REVOCATION OF LICENSE—DYING DECLARA-
TIONS—ADMISSIBILITY.

3. Under Section 727, subd. 4, L. O. L., rendering admissible as evidence the declaration or act of a dying person, under a sense of impending death, respecting the cause of his death, in a proceeding to revoke the license of a physician for procuring an abortion, testimony of a physician who attended the woman after the operation, and a written statement procured by him from her as to the criminal operation, were inadmissible, where the death of the woman was not made an issuable fact by the complaint, and the evidence showed that she was hopeful of life, and told the physician that if she recovered he should tell no one of the statements.

From Multnomah: HENRY E. MCGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action in the matter of the revocation of the license of William Eisen. The facts are as follows:

On December 22, 1910, there was filed with the State Board of Medical Examiners a complaint reading thus:

"William Eisen is accused by Ben L. Norden, by this complaint, with unprofessional and dishonorable conduct, committed as follows: That the said William Eisen did, on or about the 13th day of October, 1910, in the county of Multnomah and State of Oregon, then and there being, wrongfully and unlawfully procure, and aid and abet in procuring, a criminal abortion upon one Anna Foleen by means unknown to complainant, the said Anna Foleen then and there being pregnant with child, and the said abortion then and there not being necessary to preserve the life of said Anna Foleen, and contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Afterwards the defendant, Eisen, filed his answer with the board, denying all the allegations of the complaint. With this complaint as a basis of action, the board took testimony and entered an order revoking the license of the defendant. He appealed to the circuit court, which, after a hearing, made the same order, affirming the action of the board, and the defendant has appealed to this court.          REVERSED.

For appellant there was a brief over the names of *Messrs. Murphy, Brodie & Swett* and *Mr. Waldemar Seton,* with oral arguments by *Mr. Seton* and *Mr. Dan R. Murphy.*

For respondent there was a brief over the names of *Messrs. Manning & White,* with an oral argument by *Mr. Samuel White.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The State Board of Medical Examiners has author-

ity to revoke a license to practice medicine and surgery for unprofessional or dishonorable conduct, subject however to the right of appeal as provided in the statute. Section 4733, L. O. L. By Section 4734, L. O. L., the term "unprofessional or dishonorable conduct" is declared to mean, among other things, the procuring, or aiding and abetting in procuring, a criminal abortion. It is said, in Section 4735, L. O. L., that:

"Before a license can be revoked by said board for unprofessional or dishonorable conduct under the provisions of this act a complaint of some person under oath must be filed in the office of the secretary of said board charging the acts of unprofessional or dishonorable conduct and facts complained of against the licentiate accused, in ordinary and concise language."

2. As may be done, under a long line of precedents from *McKay* v. *Freeman,* 6 Or. 449 to *Parrish* v. *Parrish,* 52 Or. 161 (96 Pac. 1066), the objection is urged for the first time at the argument on appeal that the complaint in this proceeding does not state facts sufficient to constitute a cause of action against the defendant. The only statute to which our attention has been directed, relating to what may be termed criminal abortion, is Section 1900, L. O. L., defining a certain grade of manslaughter:

"If any person shall administer to any woman pregnant with a child, any medicine, drug or substance whatever, or shall use or emply any instrument or other means with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter."

Under the requirements of Section 4735, L. O. L., it is necessary in a complaint to charge the acts of unprofessional or dishonorable conduct and facts complained of against the accused licentiate. It is not sufficient to

state merely legal conclusions. In this respect, the initial pleading in question is defective; for, although it draws a conclusion that the defendant was concerned in procuring a criminal abortion, it does not state facts sufficient to authorize the court to make the same deduction that the action of the defendant was criminal. For instance, an intent to destroy the child is an element of the crime defined in Section 1900, L. O. L., and another element is that the death of the child or of the mother must be produced by means of the administration of the medicine, drug or other substance or by the employment of the instruments or other means mentioned in the statute. Neither of these elements appear in the complaint.

3. The defendant also assigns as error that Dr. W. B. Hamilton, a physician who was called to treat Mrs. Foleen about October 30, 1910, was allowed to testify that he demanded of her that she should sign, and that she subscribed, the writing here quoted before he would treat her:

"Portland, October 30, 1910.
Dr. Eisen operated on me at his office October 13, to bring me around. Dr. Pelgram cleaned the womb October 29.       [Signed] Anna Foleen,
R. Brown, Nurse."

Over the objection of the defendant that the testimony of Dr. Hamilton and the writing were both hearsay, incompetent, and irrelevant, the court admitted, not only the testimony, but also the writing. If the death of Mrs. Foleen had been made an issuable fact by the allegations of the complaint, it would have been competent to inquire into her declarations as to the cause of her death, if they had been made under a sense of impending death. Section 727, subd. 4, L. O. L. Granting, for the sake of agrument, that the writing indicates the cause of the death of Mrs. Foleen, if the same were properly

alleged, the evidence is totally at variance with the idea that the declaration was made under the sense of impending death. The testimony, on the contrary shows that she was hopeful of life, and told the physician that if she got well he must not tell anyone of the statements. In addition to the Code itself, *State* v. *Gray*, 43 Or. 446, 450 (74 Pac. 927), is a sufficient precedent in support of this doctrine. This was the only evidence in the record tending to show that the defendant did any act towards producing a criminal abortion on Mrs. Foleen. His own testimony flatly contradicts the charge. It was competent to admit the representations of Mrs. Foleen, if she was sick, as to the nature of the malady or bodily feelings under which she was suffering. *State* v. *Glass*, 5 Or. 73. This, however, does not refer to the cause of her death, if that were an issuable fact.

Because the complaint is insufficient in point of law, and for the admission of the writing the testimony of Dr. Hamilton, the judgment of the circuit court is reversed, and the cause remanded.          REVERSED.