[Civ. No. 6616.   First Appellate District, Division One.—January 21, 1930.]

G. CARL H. McPHEETERS, Respondent, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA, Appellant.

Bradford M. Melvin and Wm. J. DeMartini for Appellant.

Arthur Allyn for Respondent.

TYLER, P. J.—Appeal from a judgment of the Superior Court annulling and setting aside a judgment and order of the Board of Medical Examiners of the State of California, revoking the license of respondent herein to practice medicine and surgery.

The complaint filed with the clerk of the Board of Medical Examiners alleged that respondent had been guilty of unprofessional conduct in violating section 14, subdivision 2 (Stats. 1913, p. 732), and acts amendatory thereof, authorizing the revocation of the license of a physician for unprofessional conduct. This section is commonly known as the Medical Practice Act. It declares "unprofessional conduct" to mean "the willful betraying of a professional secret." The misconduct complained of by the board consisted in the writing of certain letters by respondent to a young lady who had formerly been employed in his office as an assistant, and who was acquainted with his patients and familiar with their ailments and physical disabilities. These letters reveal the fact that respondent and his former office assistant were on very intimate terms with each other. Some of the letters contained the information that the ac-

cused had performed operations of an ordinary character upon certain of his patients and they described the condition of such patients and the nature of the operations. Another letter revealed the information that a particular patient, who was contemplating marriage, had made certain inquiries concerning sex relations generally, with which she was apparently unfamiliar. Respondent described in this letter the nature of the inquiries and the knowledge he was able to impart to her upon the subject. The charges made were not filed or pressed by any of the persons whose secrets are alleged to have been wilfully betrayed, but were filed by the Medical Examiners who acquired possession of the letters after the death of the recipient. The letters contained nothing which would in any manner tend to disgrace, embarrass or incriminate any of the patients, as they referred to ordinary operations, one of which was the delivery of a child. It was stipulated at the hearing before the board that the patients would not, if called to testify, make any objection whatsoever to the disclosures made by the accused. Under all of the facts, the trial court was of the opinion that no evidence was adduced at the trial of respondent before the board proving or tending to prove that he was guilty of unprofessional conduct in wilfully betraying any professional secrets. It was the further opinion of the court that the portion of the statute upon which said accusation was based is contrary and repugnant to and in violation of section 1, article I, and section 13, article I, of the Constitution of the state of California, and that it was likewise violative of section 1, article XIV of the Constitution of the United States. Assuming that portion of the act in question to be constitutional, we are of the opinion that the acts complained of do not come within the ban of the statute. █ The phrase ''willful betrayal of professional secrets'' cannot be held to apply to any and all disclosures that a physician may intentionally make. If this were so, it would be a transgression under the act to divulge the fact that a patient was suffering from a bruise or fracture or of one of the many common diseases that human flesh is heir to. █ The statute is, in its nature, penal and such laws are to be strictly construed in favor of an accused. Nothing is regarded as intended that is not within the letter as well as the spirit of the act; nothing that is

not clearly and intelligibly described in the very words, as manifestly intended by the legislature. Crimes built up by courts or boards with the aid of inference, implication and strained construction are repugnant to the spirit and letter of the law. It would be extremely wrong that one should be reasoned into a penalty when the words of an act do not warrant or justify it. ■ Statutes of this character should be so construed as to carry out the obvious intent of the legislature, and with this end in view they should be given a reasonable construction. No rule of statutory construction is violated by adopting the common-sense meaning of words which best harmonize with the object and intent of the legislature. ■ By the use of the word "willful" the legislature without doubt intended to mean an act that implied an actual and conscious infraction of duty, and it would be a harsh and unreasonable construction to hold otherwise and to say that the disclosures here involved were of that character intended to be remedied by the prohibitory enactment, and common humanity requires that it should not be construed in this limited and strict sense. If such a construction was imperative, any disclosures, though harmless, and innocently made without objection from the patients and regardless of their nature, would deprive a physician of his right to practice medicine, a right which has taken him four years of study and a large expenditure of money to acquire. ■ Legislation of the character embraced within the general scope of the act in question, in so far as it provides for the revocation of the certificate of a physician, can be sustained only upon the ground that the legislature has authority under its general police power to provide all reasonable regulations that may necessarily affect the public health, safety and morals. The power thus conferred must be under provisions of law which are reasonable and declared with such certainty and definiteness in the act that a physician may know exactly what they are. (*Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590 [113 Am. St. Rep. 315, 3 L. R. A. (N. S.) 896, 84 Pac. 39].) That the legislature did not intend the restriction to apply to all disclosures is evidenced by its use of the word "willful." It has been held that such word means "deliberately and intentionally and with design and purpose." (*State* v. *Smith,* 159 Minn. 429, 511 [199 N. W.

427].) It implies a deliberate intention for which no reasonable excuse can be given to do or refrain from doing some act which good faith in the performance of some duty requires, as the case may be. It further implies that there must be some design or purpose and intent to do an injury. The word sometimes means "with a bad purpose and with the intention designedly and purposely to cause injury." So it has been held that an act though intentional is not wilful unless done with a wrongful purpose, or with the design to injure another, or committed out of mere wantonness or lawlessness. (*People* v. *Martinites*, 168 App. Div. 446 [153 N. Y. Supp. 791]; *Ex parte Cote*, 93 Vt. 10 [106 Atl. 519].) It means "bad motive or purpose with the direct effect of injuring another," and involves the idea of premeditation and determination to do the act, though known to be forbidden. (*Kurg* v. *Empire etc. Co.*, 148 Vt. 585 [58 A. L. R. 193, 139 S. E. 478]; *Gildersleeve* v. *Neuton Steel Co.*, 109 Ohio St. 341 [142 N. E. 678].) Given a rational and reasonable construction, we do not think that the acts complained of come within the ban of the statute. The act was never designed or intended to seal the lips of a physician against any and all disclosures, irrespective of their harmless character, nor was it designed to embrace facts not connected with the practice of the profession.

This conclusion renders unnecessary a discussion and decision upon the question of the constitutionality of the act.

The judgment annulling the order of revocation of respondent's license made by the Board of Medical Examiners is affirmed.

Cashin, J., concurred.