[Civ. No. 7433. First Appellate District, Division Two.—January 28, 1931.]

FRED B. TAPLEY, Appellant, v. CLARK L. ABBOTT et al., Respondents.

Harold C. Faulkner, James B. O'Connor, William A. Kelly and W. E. Davies for Appellant.

Richard M. Lyman, Jr., and Otto J. Emme for Respondents.

LUCAS, J., *pro tem.*—This is an appeal from a judgment of the superior court affirming on writ of *certiorari* an order of the respondent Board of Medical Examiners wherein they found appellant guilty of unprofessional conduct and revoked his license to practice medicine and surgery in the state of California.

The complaint as originally filed and sworn to alleged that appellant "by means of instruments and medicinal preparations attempted to and did procure" two certain "criminal" abortions, from which in each instance death resulted. Prior to the conclusion of the hearing before the board amendments were allowed to conform to the proof so that the complaint in each count alleged that appellant also "agreed and/or offered to" procure said abortions.

Appellant specifies four grounds for reversal, asserting that the decisions and proceedings of the Board of Medical Examiners are void for want of jurisdiction, in that (1) the complaint itself is fatally defective in omitting to state facts sufficient to show that appellant procured or aided or abetted or attempted or agreed or offered to procure a criminal abortion; (2) the board denied appellant "due process of law" by rejecting the defense that appellant had been acquitted by the superior court of Yuba County of one of the charges specified in said complaint; (3) the board

without authority allowed amendments to the complaint by the insertion of new unsworn charges without according an opportunity to appellant to plead to or put the same in issue; and (4) there is no evidence to support any of the sworn charges of the complaint.

■ Appellant's contention as to the insufficiency of the allegations, either before or after amendment, is that respondents were required to do more than to merely word the accusation in the language of the statute; that the words "criminal abortion" amount to no more than the legal conclusion of the pleader upon undisclosed facts; and that all of the facts necessary to the validity of a criminal complaint for criminal abortions should be alleged.

Both the District Court of Appeal and the Supreme Court of California, however, have held contrary to appellant's contention. In the case of *Lanterman* v. *Anderson*, 36 Cal. App. 472 [172 Pac. 625], the court held that a complaint filed before the State Board of Medical Examiners charging a physician in the language of the act with committing a criminal abortion is sufficient without stating the facts enumerated in the Penal Code, for the reason that the language of the statute is sufficiently explicit to advise a person charged thereunder of the particular kind of unprofessional conduct of which he is accused. And in the case of *Suckow* v. *Alderson*, 182 Cal. 247 [187 Pac. 965], the Supreme Court similarly held.

■ As to the second stated ground for reversal the court is of the opinion that the respondent board was not bound by the action of the superior court in acquitting appellant of a charge of abortion based upon certain alleged acts of appellant complained of in the complaint herein, and that evidence of such acquittal was properly rejected.

"Judgments in criminal proceedings are generally not competent or conclusive in civil proceedings, and *vice versa*, not only because ordinarily there is not the necessary identity of parties, but also because the same rules of evidence and degree of proof do not prevail in the two classes of proceedings." (15 Cal. Jur. 114.)

While there appear to be no decisions in California squarely in point, it has been held in at least one sister state (Colorado) that a board of medical examiners is not bound to accept as final a judgment of acquittal in a criminal

court. (*State Board of Medical Examiners* v. *Noble*, 65 Colo. 410 [177 Pac. 141].) Furthermore, it is to be noted that the judgment of acquittal in the instant case, even if constituting a defense, would be an answer to but one of the acts complained of in the complaint filed against appellant.

■ After a consideration of the third point raised on appeal, we believe it is likewise without merit. The jurisdiction of appellant was originally acquired by filing with the secretary of the Board of Medical Examiners a sworn complaint charging appellant with having been guilty of unprofessional conduct in that he actually procured two criminal abortions, following which a citation, made returnable at the next regular session of the board, was issued and served upon appellant. He was thereby notified of the unprofessional conduct with which he was charged, and given an opportunity to defend the action on its merits. In the course of the hearing evidence was introduced tending to prove that appellant was guilty of offering and agreeing to procure the two criminal abortions, and the amendments allowed shortly before the conclusion of the hearing were made merely to conform to such proof.

■ It is common practice to allow such amendments in civil cases. This is not so in criminal actions, but that proceedings before the State Board of Medical Examiners are more closely akin to civil than to criminal proceedings is well established.

"In considering and determining the case of one who is charged with unprofessional conduct, the State Board of Medical Examiners . . . exercises a *quasi*-judicial function. . . . The proceedings of the board are not, however, governed by the technical rules of pleading and practice, and the analogies of criminal law may not be invoked. . . . Nor are the provisions of the Penal Code made applicable by reason of the fact that the conduct of the accused is described as 'criminal' abortion." (20 Cal. Jur., pp. 1063, 1064.)

It may also be said that the charges of agreeing to perform criminal abortions were not so entirely foreign to the charges of actually performing such abortions as to take appellant by surprise or to jeopardize his right of defense. Appellant did not choose to testify in his own behalf either before or after the amendments were allowed, and his coun-

sel rested his case and argued it without any request for a continuance or permission to file an amended answer or to produce further evidence.

As to the last of appellant's contentions, respondents concede that if there was no evidence to support the accusations they were without jurisdiction to either adjudge appellant guilty or to revoke his license, but an examination of the record presented on review by no means shows it destitute of evidence to support the accusations.

In one of the cases complained of (that of a married woman) the husband testified that his wife told appellant that she was pregnant and asked him if he could do anything for her. Appellant said he could but it would cost her fifty dollars. The money was paid and appellant took the woman into another room, where they remained together some fifteen or twenty minutes. After leaving appellant's office the wife complained of pain in her abdomen. Three days afterward she became very ill and was taken to a hospital, where she died some six weeks later. The attending physician testified that in his opinion her condition was due to an incomplete abortion. He also gave it as his opinion, gained from examinations and consultations had prior to her visit to appellant, that she was pregnant and that there was no reason why she would not have been able to bear a child. The record before this court further reveals a canceled check, indorsed by appellant, which was said to have been given in payment of the operation, and it also contains the uncontradicted statement of the husband to the effect that appellant, on demand, returned to him the fifty dollars after his wife died.

In the other case (that of a single woman) there is uncontradicted evidence of an agreement to perform an abortion. The evidence of the operation having been performed is practically the same as that of the first case, with the addition that one witness heard decedent groaning while she was in appellant's office. As to the criminal aspect of the operation there is evidence of pregnancy, but none as to whether the operation was necessary in order to preserve life. The most that can be said on that subject is that neither appellant nor anyone on his behalf made any pretense that such an operation was in fact necessary.

As to criminal actions for abortion, "there is a wide divergence of authority upon the question as to whether under a statute such as ours the burden of establishing that the abortion was actually necessary is an affirmative defense or whether the proposition is to be negatived in the first instance by the prosecution." (*People* v. *Balkwell*, 143 Cal. 259 [76 Pac. 1017, 1018].) The courts have contented themselves with merely holding that *if* the burden rested upon the prosecution such burden was sufficiently met in the particular case under consideration.

For the purpose of determining whether the respondent board in the case at bar had jurisdiction it would seem reasonable to conclude that positive proof of appellant's agreement to perform an abortion before he had even seen or examined the woman should be sufficient to place upon him the burden of affirmatively showing that the operation was necessary.

The words "unprofessional conduct" in reference to the acts under discussion herein are defined in the Medical Practice Act (Deering's Gen. Laws 1923, Act 4807, sec. 14) to mean "the procuring or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion".

It is the opinion of the court, from an examination of the record and a consideration of the facts above detailed, that there is ample evidence of appellant's unprofessional conduct in this regard to warrant the conclusion that the respondent board did not exceed its authority when it revoked appellant's license to practice medicine and surgery.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.