Argued January 24, reversed and remanded June 6, petition for
rehearing denied July 6, 1951

IN THE MATTER OF THE PROCEEDINGS FOR THE REVOCA-
TION OF THE LICENSE OF GEORGE H. BUCK TO PRACTICE
MEDICINE AND SURGERY IN THE STATE OF OREGON.

## BOARD OF MEDICAL EXAMINERS OF THE
## STATE OF OREGON *v.* GEORGE H. BUCK
### 232 P. 2d 791

*Howard I. Bobbitt,* of Portland, argued the cause and filed a brief for appellant.

*Ralph E. Moody,* of Salem, argued the cause for respondent. With him on the brief were James L. Means, of Portland, and Henry M. Hanzen, of Salem.

HAY, J., not sitting.

BRAND, C. J.

A complaint was filed with the Secretary of the Board of Medical Examiners against the defendant Dr. George H. Buck, seeking the revocation of his license to practice medicine and surgery. After a hearing, the Board revoked the license. The defendant appealed to the circuit court which reversed the order of revocation and directed the Board to reinstate the defendant as a duly licensed physician and surgeon. The Board appeals.

The original complaint was filed on 25 September 1946. It contained 13 alleged causes of complaint separately stated. In each instance the act complained of was alleged to have occurred "during a period approximately between the 10th day of October, 1943, and the 18th day of October, 1943". The amended complaint was filed on 13 December 1946. It contained 14 alleged causes of complaint, separately stated. In each instance the act complained of was alleged to have occurred "during a period approximately between the 2nd day of October, 1943, and the 19th day of October, 1943". Although the methods employed, and the ensuing results, are variously stated in the 27 alleged causes of complaint, nevertheless, they are all based upon the same general charge, namely, the causing of an abortion by operation upon, or treatment, of one Frances Rasmussen. In some instances, the death of the child, and in others, the death of the mother, is alleged. In the

circuit court the issue was determined solely upon the pleading. It was held that none of the counts in the original or in the amended complaint state facts constituting sufficient ground for the revocation of the license. The court made a special finding to the effect that the Board of Medical Examiners had no jurisdiction to determine any matter alleged in the 14th charge of the amended complaint, because that complaint was not filed within three years from the date of the alleged act.

The Board of Medical Examiners exists by virtue of the provisions of Title 54, Chapter 9, O.C.L.A., as amended. The statute provides in part as follows:

"The board shall have the following powers, in addition to the powers otherwise granted in this chapter, and shall have all powers necessary or proper to carry granted powers into effect:

"(a) To make such rules and regulations not inconsistent with the laws of this state as shall be deemed necessary or proper to carry out the lawful powers and duties of the board.

"(b) To make such rules and regulations as may be necessary or proper to determine the qualifications of applicants for licensure to practice medicine and surgery in the state of Oregon, and to establish educational, moral and professional standards for such applicants, subject to laws of this state.

"* * *

"(h) To refuse to issue licenses and to suspend or revoke licenses to practice medicine and surgery within the state of Oregon in accordance with the provisions of this chapter and the rules and regulations of the board.

"* * *

"(k) To investigate any alleged violation of this act and bring to the attention of the proper district attorney any alleged violation of the act.

"(1) To enforce the provisions of this chapter and to exercise general supervision over the practice of medicine and surgery within the state of Oregon. * * *" O.C.L.A., § 54-913.

"The board may refuse to grant a license to any applicant who desires to practice medicine and surgery in this state or may suspend or revoke such licenses for any of the following reasons:

"(a) Unprofessional or dishonorable conduct;

"(b) The procuring or aiding or abetting in procuring an abortion unless such is done for the relief of a woman whose health appears in peril because of her pregnant condition after due consultation with another duly licensed medical physician and surgeon;

"* * *

"(i) Conviction of any offense for which the punishment may be incarceration in a state penitentiary or in a federal prison; a copy of the record of conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence;

"* * *" O.C.L.A., § 54-931.

"When used in this act, the following terms will have the following meanings, unless otherwise limited:

"* * *

"'Unprofessional or dishonorable conduct' shall mean such conduct as would not be indulged in by an ethical physician and surgeon, under all the circumstances, taking into consideration the good of the patient, and the public, the time and place.

"'Abortion' shall mean the expulsion of the foetus at a period of uterogestation so early that it has not acquired the power of sustaining an independent life; provided it shall be conclusively presumed for the purpose of this statute that the foetus has not acquired such power earlier than one hundred fifty (150) days after gestation, and a disputable presumption of lack of such power shall

arise if the expulsion take place earlier than two hundred forty (240) days after gestation. "* * *" O.C.L.A., § 54-901.

In addition to the substantive rules as above set forth, the statute also prescribes rules of procedure: The statute provides that a complaint seeking revocation of a license "shall not be filed later than three years from the date that the act complained of was committed by such licensee." It will be observed that the original complaint was filed within three years from the time of the alleged offense but that the amended complaint was not.

We now direct our attention to the only issue presented, namely, the sufficiency of the pleadings. We shall outline in detail the allegations of the first count in the original complaint and then summarize the differences as they appear in the succeeding 12 counts thereof. Count I: It is alleged that the defendant was a licensed physician and surgeon. This allegation is repeated in the succeeding counts.

## "II

"That the said George H. Buck within the City of Portland, Multnomah County, Oregon, did, during a period approximately between the 10th day of October, 1943, and the 18th day of October, 1943, procure and perform an abortion upon one Frances Rasmussen, who was then and there in a pregnant condition.

## "III

"That the health of the said Frances Rasmussen was not in peril because of her pregnant condition, and that the said George H. Buck did not duly consult with another duly licensed medical physician and surgeon prior to performing said abortion.

"IV

"That the said conduct on the part of the said George H. Buck was and is contrary to the laws of the State of Oregon, and particularly Section 54-931, O.C.L.A."

All succeeding counts reiterate the allegation of paragraph IV. The second count alleges:

"That the said George H. Buck is guilty of unprofessional and dishonorable conduct in that he did, within the City of Portland, Multnomah County, Oregon, during a period approximately between the 10th day of October, 1943, and the 18th day of October, 1943, perform an operation upon one Frances Rasmussen, or upon the child with which she was then and there pregnant, the exact kind and nature of which operation is unknown to complainant, which resulted in the death of the child with which the said Frances Rasmussen was then and there pregnant."

The third count differs from the corresponding paragraph of the second count in that the charge is that the defendant did administer to and treat Frances Rasmussen or the child with which she was then and there pregnant in such a manner as to result in the death of the child. The fourth count alleges that the operation was performed wilfully. The fifth count is like the corresponding paragraph of the third count except that it alleges that the treatment was wilful. The sixth count alleges that the defendant's operation was negligently performed, resulting in the death of the child. The seventh count alleges that the treatment was negligent, resulting in the death of the child. The eighth count alleges unprofessional conduct and the performing of an operation upon Frances Rasmussen or upon the child, which resulted in the death of Frances Rasmussen. The ninth count alleges unprofessional

and dishonorable conduct in treating Frances Rasmussen or the child, resulting in the death of Frances Rasmussen. The tenth count alleges unprofessional conduct by the wilful performing of an operation upon Frances Rasmussen or the child, causing the death of Frances Rasmussen. The eleventh count is like the corresponding paragraph of the ninth count except that the act is charged as wilfully done. The twelfth count charges unprofessional and dishonorable conduct and the negligent performing of an operation upon Frances Rasmussen or upon the child, resulting in the death of Frances Rasmussen. The thirteenth count resembles the twelfth count except that the charge is negligently administering to and treating Frances Rasmussen. The allegations of the first thirteen counts of the amended complaint are substantially identical to the corresponding counts of the original complaint except for the fact that the dates within which the acts are alleged to have occurred are in each case stated to be "approximately between the 2nd day of October, 1943 and the 19th day of October, 1943" instead of "between the 10th day of October, 1943, and the 18th day of October, 1943" as stated in the original complaint. The fourteenth count of the amended complaint alleges:

"That the said George H. Buck is guilty of unprofessional and dishonorable conduct in that he did, within the City of Portland, Multnomah County, Oregon, during a period approximately between the 2nd day of October, 1943, and the 19th day of October, 1943, operate, administer to or treat one Frances Rasmussen in such a manner as to cause the premature expulsion of the foetus with which the said Frances Rasmussen was then and there pregnant."

■ The only question for our determination relates to the sufficiency of the complaint, but whether a pleading should be liberally or strictly construed by this court may be influenced by the record below. We will briefly review that situation. The original complaint was filed on 25 September 1946 and was served upon the defendant, together with a notice of time and place of hearing. The record fails to show any appearance or answer by the defendant as to the original complaint. On the day appointed for the hearing, to wit, on 13 December 1946, an amended complaint was filed, to the filing of which no objection was made. However, the defendant moved to strike from the amended complaint certain irrelevant matter concerning proceedings of a similar nature which had previously been brought against the defendant. Those allegations were stricken by the Board.

On the same day the defendant filed a general denial of the charges. No demurrer was filed at any time, but in the course of the trial before the Board, counsel for the defendant objected to the admission of any evidence in the following language:

"MR. MEANS: * * * I, at this time, wish to object to the admission of any evidence on causes of complaint 2 to 14, inclusive, on the ground and for the reason that they state no sufficient cause there for the consideration or action of this Board."

The objection was overruled. No challenge was made to the first count of the amended complaint. It will be recalled that the original complaint charged that the defendant's acts were committed "approximately between the 10th day of October, 1943, and the 18th day of October, 1943". At the close of the testimony before the Board, counsel (for the Board) moved that the complaint be amended to conform to the testi-

mony of Dr. Buck that the dates between which the treatment was administered were the 2nd day of October and the 19th day of October, 1943. Upon inquiry, counsel for the defendant stated that he had no objection to the amendment and it was made. The findings of the Board followed the allegations of the amended complaint. On the appeal to the circuit court, the record fails to show the filing of any motion or demurrer by the defendant, but an order extending the time to file briefs refers to a motion by the defendant to quash the complaint and dismiss the proceedings on the ground that the complaint stated only conclusions of law; on the further ground that the Board had no authority to authorize the filing of an amended complaint and that the amended complaint contains a cause of action not included in the original complaint, and also upon the general ground that the Board was without jurisdiction. At no time did the defendant request the Board to exercise its statutory power "to require that the complaint be made more definite and certain." O.C.L.A., § 54-932.

The defendant makes the following contentions: "The license to practice medicine is a valuable property right, and the statutes authorizing revocation of license to practice medicine must be strictly followed, said statutes are highly penal and must be construed in the physician's favor." The courts are not in accord as to whether the right to practice medicine should be classed as a property right or as a privilege. *Horton v. Clark*, 316 Mo. 770, 293 S.W. 362.

In *Semler v. Oregon State Board of Dental Examiners et al*, 148 Or. 50, 34 P. 2d 311, this court said:

"* * * We conclude then that, while the right of the plaintiff to practice his profession is a

valuable one and is in the nature of a property right of which he cannot be arbitrarily deprived, it is, nevertheless, a privilege subordinate to the duty of the state to enact reasonable laws to protect the public health and safety.''

From an early decision under the authorship of a distinguished judge of this court, we quote the following:

"* * * The right to practice medicine is a privilege which the legislature has constitutional authority to grant upon certain reasonably prescribed conditions. Before a person is entitled to the privilege or can be said to have obtained it, he must comply with the statutory provisions or requirements; and, if the privilege once existed, he may lose it by noncompliance with new requirements. * * *'' *Miller v. Medical Board,* 33 Or. 5, 10, 52 P. 763.

Supporting the view that the right to practice medicine is a property right. See *State et al. v. Borah,* 51 Ariz. 318, 76 P. 2d 757; *Dent v. State of West Virginia,* 129 U.S. 114, 32 L. Ed. 623; *Northern Cedar Co. v. French,* 131 Wash. 394, 230 P. 837; *Lawrence v. Board of Registration in Medicine,* 239 Mass. 424, 132 N.E. 174; *Davis v. Board of Registration in Medicine,* 251 Mass. 283, 146 N.E. 708; *Sloan v. Mitchell,* 113 W. Va. 506, 168 S.E. 800; *West Virginia State Medical Ass'n v. Public Health Council of West Virginia,* 125 W. Va. 152, 23 S.E. 2d 609; 41 Am. Jur., Physicians and Surgeons, § 3, p. 135. However, as said in *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 P. 132, 134:

"It is not material for the purpose of this case to determine whether the right to practice medicine be classed as a property right, as contended by the plaintiff in error, or as a mere privilege, as insisted

by the board, for it must be conceded that it is a valuable right. \* \* \*"

■ It is impossible to generalize as to the nature and extent of rights which may arise by reason of the issuance of licenses by public authorities. Depending upon the nature of the activity involved, and the license issued, a licensee may acquire a bare privilege, or, at the other extreme, a right, whether called a property right or not, which may be divested only by procedure satisfying the requirements of the due process clause of the Federal Constitution. The right of a licensee to practice medicine, though subject to the regulation under the police power, is of the latter kind. *Hughes v. State Board of Medical Examiners,* 278 U.S. 562, 162 Ga. 246, 134 S.E. 42; *Smith v. State Board of Medical Examiners,* 140 Iowa 66, 117 N.W. 1116; *Francisco v. Board of Dental Examiners,* Tex. Civ. App. (1941), 149 S.W. 2d 619; *Craft v. Balderston,* 58 Idaho 650, 78 P. 2d 122; *Craven v. Bierring,* 222 Iowa 613, 269 N.W. 801; *State ex rel. Munch v. Davis,* 143 Fla. 236, 196 S. 491; *Ramsey v. Shelton,* 329 Ill. 432, 160 N.E. 769; *State v. Hanson,* 201 Iowa 579, 207 N.W. 769; *Laughney v. Maybury,* 145 Wash. 146, 259 P. 17; *Garfield v. United States ex rel. Goldsby,* 211 U.S. 249, 53 L. Ed. 168.

■ The statute provides in general terms for notice and hearing, O.C.L.A., § 54-932, and the record shows that notice was given and hearing held. But, a review of the decisions will disclose that the adequacy of notice and the character of the hearing accorded is to be tested, not alone by the bare provisions of the statute, but also by the requirements of procedural due process. Only by the application of constitutional principles and decisions can the statutory requirements of notice and hearing be made explicit. For example, both the statute,

and the notice given pursuant thereto, must be sufficiently definite to give to the licensee reasonable notice and reasonable opportunity to be heard, and to present a defense. Again, arbitrary action would be violative of due process, even though notice were given and hearing held. The following authorities, based on constitutional principles, furnish tests by which the procedure in the pending case is to be measured: *State of Missouri ex rel. Hurwitz v. North,* 271 U.S. 40, 70 L. Ed. 818; *Reardon v. Dental Commission,* 128 Conn. 116, 20 A2d 622; *Davis v. State,* 183 Md. 385, 37 A2d 880, (condemning arbitrary action); *State ex rel Munch v. Davis,* supra; *Hanson v. Michigan State Board of Registration in Medicine,* 253 Mich. 601, 236 N.W. 225, Certiorari denied, 284 U.S. 637; *Yoshizawa v. Hewitt,* 52 F. 2d 411, C.C.A., Ninth (1931); *People v. Apfelbaum,* 251 Ill. 18, 95 N.E. 995. We conclude that:

> "* * * The due process clause does not guarantee to a citizen of a state any particular form or method of state procedure. Its requirements are satisfied if he has reasonable notice, and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceedings and the character of the rights which may be affected by it. * * *"

The foregoing was said by Justice Stone in *State of Missouri ex rel. Hurwitz v. North,* supra, with regard to proceedings for the revocation of the license of a physician charged with producing an abortion. What is reasonable procedure in cases of this kind is made clear by the cases cited.

To the extent indicated, we are in accord with the proposition which we have quoted from the defendant's brief. This, however, does not necessarily mean that the statutes are in all respects to be construed as penal

and therefore strictly in favor of the physician. Such language is more nearly applicable to the substantive provisions of the act which define the grounds for the revocation of a license than they are to matters of procedure. Counsel for the defendant cites *McPheeters v. Board of Medical Examiners,* 103 Cal. App. 297, 284 P. 938. In that case the court said: "The statute is in its nature penal, and such laws are to be strictly construed in favor of an accused." The meaning of the court is made clear in the same paragraph of the opinion. We quote:

"* * * Statutes of this character should be so construed as to carry out the obvious intent of the Legislature, and with this end in view they should be given a reasonable construction. No rule of statutory construction is violated by adopting the common sense meaning of words which best harmonize with the object and intent of the Legislature. * * *"

Counsel for the defendant also cites annotations found in 54 A.L.R. 1504, where the rule of strict construction is again stated. The annotation is prefaced, however, by the statement: "Questions of practice, procedure, or evidence, as distinguished from substantive grounds of revocation, are beyond the scope of the annotation." The defendant relies upon *State of Florida ex rel. Sbordy v. Rowlett et al.,* 138 Fla. 330, 190 S. 59, 123 A.L.R. 769, 773, where it was contended that the complaint failed to charge the commission of any acts which under the provisions of the statute constituted grounds for the revocation of his license. The rule of strict construction was stated. The court said:

"The law is settled in Florida that charges filed with the Board of Medical Examiners constituting grounds for revoking a license to practice medicine

must be alleged with reasonable certainty and show the nature and cause of the accusation and he must be given reasonable opportunity to defend against attempted proof of such charges. * * *''

*Chenoweth v. State Board of Medical Examiners,* supra, is cited upon this point. The statute authorized revocation of a license for ''causing the publication and circulation of an advertisement relative to any disease of the sexual organs.'' The court first held that the advertisement, for the publication of which the license was revoked, did not mention such diseases, and secondly, it held that the language of the statute was void for indefiniteness. In *Semler v. Oregon Dental Examiners,* supra, we said, concerning the Chenoweth case, ''Its logic does not appeal to us as being sound and we decline to follow it.'' Viewed from the standpoint of the physician, these statutes may be considered to partake of a penal quality, but there is substantial authority to the effect that they should be considered remedial in nature.

In *State ex rel. Lentine v. State Board of Health et al.,* 334 Mo. 220, 65 S.W. 2d 943, the court referred to previous rulings to the effect that the statute was penal, but added:

''* * * Nevertheless it is a wholesome and well-recognized rule of law that powers conferred upon boards of health to enable them effectually to perform their important functions in safeguarding the public health should receive a liberal construction.
''* * * But such rules should not be so applied as to restrict or confine the operation of a statute within narrower limits or bounds than manifestly intended by the Legislature and whether the proper construction of a statute should be strict or liberal it certainly should be such as to effectuate the obvious purpose of its enactment and the evident

legislative intent. Reference should be had to the policy adopted by the Legislature in reference to the subject-matter, the object of the statute, and the mischief it strikes at or seeks to prevent, as well as the remedy provided. Looking to the policy and object of our Medical Practice Act as a whole, we find it to be an exercise of the inherent police power of the state in the protection of its people attempting to secure to the people the services of competent practitioners learned and skilled in the science of medicine, of good moral character and honorable and reputable in professional conduct. * * *''

In *Kemp v. Board of Medical Supervisors,* 46 App. D. C. 173, 180, it was held that, ''The revocation of the license is in the nature of a remedial measure for the protection of the public, and not a penalty or forfeiture. * * *'' See also *South Carolina State Board of Dental Examiners v. Breeland,* 208 S.C. 469, 38 S.E. 2d 644, 647.

■ The defendant relies upon the board rule that an administrative body has only such power as is given it by statute. *Vermejo Club v. French,* 43 N.M. 45, 49, 85 P. 2d 90; *City of New York v. Maltbie,* 53 N.Y.S. 2d 234, affirmed, 53 N.Y.S. 2d 953, 294 N.Y. 931, 63 N.E. 2d 119; *State ex rel Northeastern Transportation Co. v. Schaaf,* 198 Wash. 52, 55, 86 P. 2d 1112; *Tom Lee, Inc. v. Pacific Telephone & Telegraph Co.,* 154 Or. 272, 59 P. 2d 683. The rule is better stated in *Tom Lee, Inc. v. Pacific Telephone & Telegraph Co.,* supra, where it is held that the powers of administrative bodies are limited to those conferred by statute, either expressly or by necessary implication. It is true, as defendant contends, that an administrative body does not share with courts ''the judicial power'' of the state, *Batty v. Arizona State Dental Board,* 57 Ariz. 239, 112 P. 2d

870; *Suckow v. Board of Medical Examiners,* 182 Cal. 247, 187 P. 965, but the fact that its powers are generally executive or administrative in nature, *Gouge v. David et al.,* 185 Or. 437, 202 P. 2d 489, is not a restriction upon the exercise of delegated powers.

■■ The defendant relies upon the common-law rule that upon the filing of an amended complaint the original complaint ceases to be a part of the record. Having thus eliminated the original complaint, he asserts that we cannot consider the amended complaint because administrative tribunals have no authority to permit amendments. Defendant relies upon the following authorities: 41 Am. Jur., Pleading, § 289, p. 489; *Diehl v. Adams County Mutual Ins. Co.,* 58 Pa. 443, 98 Am. Dec. 302; *Johnson v. Walsh,* 65 F. Supp. 157, 160. The authorities cited relate to amendments as a matter of right as distinguished from amendments by leave of court and they all relate to strictly judicial proceedings. They are not in point. Defendant cites *Irwin v. Paulett,* 1 Kan. 418, 428 (1863), which holds that the authority to make amendments is derived solely from statute. In that case the statute provided that the court may, in furtherance of justice, amend a pleading when the amendment does not change substantially the claim or defense. The court merely held that the amendment did change substantially the claim and that therefore it was error to permit the amendment. The right to amend in such manner as to substantially change the cause of action (O.C.L.A., § 1-1006), especially when a statute of limitation is involved, presents a question which will later receive our attention. In the absence of statute, courts in the exercise of their general common-law jurisdiction, have power to permit amendment. 49 C.J., Pleading, § 595, p. 471. We know of nothing

in law or in common sense which should prohibit an administrative body from permitting the amendment of a complaint in a proper case. The statute provides that the proceedings for revocation shall be:

"* * * substantially in accord with the following procedure:

"(a) * * * A complaint following the terms of the statute shall be sufficient * * *

"* * *

"(k) Appearance of the accused at a hearing shall be a waiver of all procedural irregularities.

"(l) Strict rules of pleading need not be followed but the practice shall conform as nearly as practical to equity suits. * * *" O.C.L.A., § 54-932.

The power to permit amendments was recognized in *Tapley v. Abbott et al., State Board of Medical Examiners,* 111 Cal. App. 397, 295 P. 911. The record in the pending case does not show that the Board issued a formal order permitting the filing of an amended complaint, but, if the Board had power to make such an order, then it also had the power to validate a premature filing. We quote:

"* * * we hold that since the court had discretionary power to allow the filing of an amended complaint prior to the filing thereof, it also had power to validate a premature filing. This in effect the court did by denying the defendants' motion to strike the amended complaint. Thereafter the defendants Mumford answered the amended complaint and went to trial upon the issues made." *Mumper v. Matthes,* 186 Or. 357, 364, 206 P. 2d 82.

In view of the statutory provision empowering the Board to require that a complaint be made more definite and certain (O.C.L.A., § 54-932), there can be no question concerning its power to permit the filing of an amended complaint or to validate one prematurely

filed. The defendant filed an answer to the amended complaint and the cause was tried thereon. We must therefore conclude that the Board had permitted or ratified the filing. We hold that it was properly filed.

In the light of the principles above set forth, we will consider the sufficiency of the complaint. The first thirteen counts of the amended complaint are in substance identical to the first thirteen counts of the original complaint, except for the change in dates previously mentioned.

The defendant contends that the amended complaint, and each count thereof, states only legal conclusions, and is fatally defective because disjunctive and uncertain. In support, counsel cites six Oregon decisions relative to the form of criminal indictments. None of them is pertinent. Counsel also cites *Bley v. Board of Dental Examiners,* 120 Cal. App. 426, 7 P. 2d 1053. The court, in that case, paid lip service to the rule "allowing great liberality in pleadings before dental and medical boards", but held that the complaint was insufficient. The case is not in harmony with the majority of decisions upon the subject.

The statute authorizes the revocation of a license for the following reason:

"(b) The procuring or aiding or abetting in procuring an abortion unless such is done for the relief of a woman whose health appears in peril because of her pregnant condition after due consultation with another duly licensed medical physician and surgeon;" O.C.L.A., § 54-931.

The first count of the complaint charges that the defendant did procure and perform an abortion upon one Frances Rasmussen who was then and there in a pregnant condition. It was alleged that the health of

Frances Rasmussen was not in peril and that George H. Buck did not duly consult with another duly licensed physician prior to performinig the abortion. Even if the health of Frances Rasmussen had appeared to be in peril, the defendant was required by statute to consult with another physician before acting, and this it is alleged he did not do. The statutory definition of an abortion is substantially the same as that found in the dictionary. From the statute we read:

" "* * *

" " 'Abortion' shall mean the expulsion of the foetus at a period of uterogestation so early that it has not acquired the power of sustaining an independent life;" O.C.L.A., § 54-901.

█ From Webster's International Dictionary we take the following definition: "abortion, the Act of giving premature birth; specif., the expulsion of the human fetus prematurely, particularly at any time before it is viable, or capable of sustaining life;" The word is one of common use and its meaning is generally understood by the public. We think the complaint sufficiently informed the defendants of the nature of the charge against him. It complied with the statutory requirement that the complaint "shall set forth the acts upon which the charge is based." It is substantially in the words of the statute which provides that a complaint following the terms of the statute shall be sufficient. "Strict rules of pleading need not be followed * * *." O.C.L.A., § 54-932. Although it is sufficient to set forth the statutory grounds for revocation in haec verba, it is not necessary to do so. *Mingo County Medical Society, Inc. v. Simon*, 124 W. Va. 493, 20 S.E. 2d 807, 809.

Even a complaint stating the charges in the alternative has been held to be not fatal to the jurisdiction

of the board. *Barron v. Board of Dental Examiners,* 44 Cal. App. 2d 790, 113 P. 2d 247. It is generally held that:

"* * * A complaint is sufficient where, and only where, it informs the physician or dentist of the nature of the wrong charged, and of the particular instances of its perpetration so that he may prepare his defense; it is not subject to the strict rules governing pleadings before a judicial tribunal, as in actions at law or in criminal prosecutions, and informality is not fatal.

"The charges must be set forth with reasonable certainty, although it has been held that certainty to a common intent is all that is required. An accusation in the language of the statute is sufficient, at least, in the case of a charge of unprofessional conduct, where the statutory language is sufficient to advise accused of the particular kind of unprofessional conduct alleged. It is not necessary to specify the law under which the charges are preferred; and, even though the acts set out are alleged to be within a specified section of the statute, it is immaterial whether they are within that section or another if they are within some section of the statute. Where revocation is sought on the ground of procuring, or aiding in procuring, a criminal abortion, it is not necessary to allege that the woman on whom the abortion was committed had become quick. The charges must be in writing and, where so provided, filed with the proper official." 70 CJS, Physicians and Surgeons, § 18, p. 891.

See also *Rinaldo v. Board of Medical Examiners of California,* 123 Cal. App. 712, 12 P. 2d 32; *Davis v. Arizona State Dental Board et al.,* 57 Ariz. 255, 112 P. 2d 877; *Richardson v. Simpson et al., State Board of Dental Examiners,* 88 Kan. 684, 129 P. 1128; *State ex rel. Williams v. Whitman et al., State Board of Dental Examiners,* 116 Fla. 196, 156 S. 705, 95 A.L.R. 1416;

*State ex rel. Hart v. Common Council of City of Duluth et al.,* 53 Minn. 238, 55 N.W. 118; *Du Vall v. Board of Medical Examiners of Arizona et al.,* 49 Ariz. 329, 66 P. 2d 1026; *Freeman v. State Board of Medical Examiners,* 54 Okla. 531, 154 P. 56. The liberal rule pronounced and followed in the above cases has been applied in cases involving the charge of performing an abortion.

From *Tapley v. Abbott et al., State Board of Medical Examiners,* 111 Cal. App. 397, 295 P. 911, supra, we quote:

"The complaint as originally filed and sworn to alleged that appellant 'by means of instruments and medicinal preparations attempted to and did procure' two certain 'criminal' abortions, from which in each instance death resulted. Prior to the conclusion of the hearing before the board, amendments were allowed to conform to the proof so that the complaint in each count alleged that appellant also 'agreed and/or offered to' procure said abortions."

The statute in general terms provided that the procuring or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion constituted unprofessional conduct warranting a revocation of license. The court said:

"* * * 'The proceedings of the board are not, however, governed by the technical rules of pleading and practice, and the analogies of criminal law may not be invoked * * * Nor are the provisions of the Penal Code made applicable by reason of the fact that the conduct of the accused is described as "criminal" abortion.' "

In *Stuck v. Board of Medical Examiners of State et al.,* 94 Cal. App. 2d 751, 211 P. 2d 389, 391, it is alleged that Stuck offered to procure an abortion upon per-

sons of divers women and that such abortions were not then and there necessary to preserve the lives of the women. The names of the women and dates of the alleged acts were set forth. The complaint was attacked for insufficiency but the objection was held to be trivial. The revocation of the license was affirmed.

In *Mississippi State Board of Health v. Johnson,* 197 Miss. 417, 19 S. 2d 445, the proceeding before the Board was instituted by the sending of a registered letter to the defendant. The statute authorized the revocation of a license for ''Procuring, or attempting to procure, or pretending to procure, or aiding or abetting in procuring or pretending to procure, an abortion that is not necessary to preserve the life of a pregnant woman.'' 6 Mississippi Code (1942), Physicians, § 8893, p. 571. The notice which was sent to the defendant charged the procuring or attempting to procure or pretending to procure an abortion not necessary to preserving the life of a pregnant woman. The court said:

''It is further laid down by the last authority [41 Am Jur, § 60, p. 184] 'In the absence of statute requiring it, the strict rules of pleading in judicial cases do not apply to revocation proceedings before a board of medical examiners * * *'. It is recognized that the members of this Board are not learned in the law and legal procedure and more laxity is allowed in their pleadings and procedure than in strict law courts, provided no substantive rights of the accused are denied him.''

In *Suckow v. Board of Medical Examiners,* 182 Cal. 247, 187 P. 965, supra, the court said:

''The statute under which the proceeding was had specifies, among other things which constitute unprofessional conduct, the following: 'The pro-

curing or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion.' The complaint before the board charges that the plaintiff did in the county of Los Angeles, state of California 'procure, aid and abet, and attempt, agree and offer to procure, a criminal abortion upon a pregnant woman,' naming a certain person. The plaintiff contends that the board could not have jurisdiction unless the charge was as specific and complete as would be necessary to an indictment under the provisions of the Penal Code defining the crime of abortion.   *   *   *

"We do not deem it necessary to discuss these points at length. Each of them was raised in the case of Lanterman v. Anderson, 36 Cal. App. 472, 172 Pac. 625, and was decided adversely to the contention of the appellant here by the District Court of Appeal of the Second District. A petition to this court for a rehearing of the cause was filed presenting precisely the same points as are presented here, and it was denied. We are satisfied with the principles stated in that case, and it must be considered as authority on the subject.   *   *   *".

In *Lanterman v. Anderson et al.,* 36 Cal. App. 472, 172 P. 625, the complaint charged:

"That on or about June 19, 1916, the said R. S. Lanterman did, in the county of Los Angeles, state of California, procure, aid, and abet, and attempt, agree, and offer to procure a criminal abortion upon a pregnant woman, to wit, Elizabeth Johnson."

The court said:

"The principal contention made, however, is that the complaint filed before the board of medical examiners was insufficient in its statement of facts to sustain the determination based thereon. The charge, as we have already quoted it, was phrased exactly in the language of that portion of the act defining the particular unprofessional conduct of

which it was charged petitioner had been guilty. Counsel for appellant argue that because the statute refers to a 'criminal abortion,' and that because in order to determine what a criminal abortion is one must look to the Penal Code, the charge would be insufficiently laid unless the acts defined in the Penal Code as constituting the crime of abortion are set forth * * * It must be said, we think, that the language of the statute is sufficiently explicit to advise a person charged thereunder of the particular kind of unprofessional conduct which it is proposed to prove against him, and that, we think, is all that need be said upon the question. * * *''

In *Munk v. Frink et al.,* 75 Neb. 172, 106 N.W. 425, the statute authorized the revocation of licenses for the procuring, or aiding or abetting in procuring a criminal abortion. The statute defined the crime of abortion. As in the case at bar, the complaint followed the language of the statute but did not incorporate the definition of abortion as contained in the statute. The court said:

"* * * It is quite true, as counsel urges, that the language succeeding the words 'as follows' does not constitute a complete description of the crime of abortion, but it is equally evident that it was not used or intended for that purpose, but for the purpose of particularizing and defining the offense charged in general terms in the preceding clause of the paragraph. It is quite likely that the entire 'count,' as it has been called, is not framed with such definiteness and precision as would be requisite in an indictment or information for the criminal prosecution of the alleged offender, but it is sufficient to inform him with reasonable certainty not only of the nature of the wrong laid to his charge, but of the particular instance of its alleged perpetration. In other words it is 'certain to a common intent,' and in a proceeding of this kind, that, we think, is all that is indispensably requisite. * * *''

Counsel for the defendant places chief reliance upon *Board of Medical Examiners v. Eisen,* 61 Or. 492, 123 P. 52. The statute in effect at the time of the alleged acts defined unprofessional or dishonorable conduct as meaning, among other things, "the procuring, or aiding and abetting in procuring, a criminal abortion." L.O.L., § 4734. The statute provided that the complaint must charge the acts of unprofessional or dishonorable conduct "in ordinary and concise language." The court referred to the statute, L.O.L., § 1900, defining criminal abortion, which reads as follows:

> "If any person shall administer to any woman pregnant with a child, any medicine, drug or substance whatever, or shall use or employ any instrument or other means with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter."

The court declared that the initial pleading was defective:

> "* * * for, although it draws a conclusion that the defendant was concerned in procuring a criminal abortion, it does not state facts sufficient to authorize the court to make the same deduction that the action of the defendant was criminal. For instance, an intent to destroy the child is an element of the crime defined in Section 1900, L. O. L., and another element is that the death of the child or of the mother must be produced by means of the administration of the medicine, drug or other substance or by the employment of the instruments or other means mentioned in the statute. * * *"

It is apparent that the decision in this case is out of harmony with the numerous cases previously cited. In any event, the Eisen case is clearly distin-

guishable from the case at bar. The statute in its present form makes no reference to criminal abortion as did the statute in the Eisen case, nor did the earlier statute contain the provisions found in O.C.L.A., § 54-932 and quoted supra. Under the provisions of the present statute and the authorities cited we hold that the first count of the original complaint was good. We find it unnecessary to consider the sufficiency of the remaining twelve counts of the original complaint. The complaint, as a whole, does merit one comment, however. Strict rules of pleading in common-law cases may require that each count of a complaint shall be tested separately from the others. In cases before a medical board in which strict rules of pleading need not be followed, and in which the essential requirement is that the charge shall be described with reasonable certainty in order to enable the defendant to prepare his defense, it would appear that the court or board might consider the allegations of the entire amended complaint in determining whether or not the defendant has received the requisite notice of the charge. Viewing the complaint thus, it is clear that each count of the original complaint referred to the same general act, namely, the procuring of an abortion upon the same person, and that the defendant was duly notified that, either by the performing of an operation or by the administering of treatment, the defendant procured an abortion upon a pregnant woman, to wit, upon Frances Rasmussen, resulting in the death of the child and the death of the mother. It is clear that all of the counts of the amended complaint relate to the same act, which was the basis of the charge in the original complaint. As we have indicated, the first count of the amended complaint was identical to the first count of the original

complaint, except as to the specification of the dates within which the act occurred. This enlargement by amendment cannot be construed as authorizing proof of any act other than that charged in the original complaint. It will not impose an undue strain upon judicial notice to hold that it would be impossible for a doctor, between the 2nd and 19th days of October, 1943, to abort the same woman more than once, especially if the act resulted in the death of both mother and child. We conclude that no new cause of action is set forth in the amended complaint. *Elliott v. Mosgrove,* 162 Or. 507, 91 P. 2d 852, 93 P. 2d 1070; *Ross v. Robinson,* 174 Or. 25, 147 P. 2d 204.

The defendant contends that the Board was without jurisdiction to consider the amended complaint because it was filed "later than three years from the date that the act complained of was committed". O.C.L.A., § 54-932 (b). The rule is well stated in *Ross v. Robinson,* supra, as follows:

"Is is a general rule that 'an amendment of a pleading will take effect by relation and thus relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different.' "

To the same effect see *Fox v. Ungar,* 164 Or. 226, 98 P. 2d 717; *Richardson v. Investment Co.,* 124 Or. 569, 264 P. 458, 265 P. 1117; *Keadle v. Padden,* 143 Or. 350, 20 P. 2d 403, 22 P. 2d 892.

Since the practice before the Board is to conform as nearly as practical to equity suits, O.C.L.A., § 54-932 (1), and since the amended complaint adds no new cause of action, it should be held to relate back to the

date of the filing of the original complaint. The cases cited on this point were actions at law, but the same rule is undoubtedly applicable to such suits in equity as may be subject to the statute of limitations. *Work v. County Nat. Bank & Trust Co. of Santa Barbara,* 4 Cal. 2d 532, 51 P. 2d 90. Since the amended complaint added no new cause of action, we are authorized to apply the rule which prevails, both in legal and equitable proceedings, and we therefore hold that the amended complaint took effect by relation as of the date of the commencement of the action. The three-year limitation does not bar these proceedings. We hold that the amended complaint describes the charge against the defendant with reasonable certainty, and states grounds, which, if proven, would authorize the revocation of the license. The trial court erred in ruling to the contrary. The judgment is reversed and the cause is remanded to the circuit court with directions to proceed with the trial of the appeal as provided in O.C.L.A., § 54-933.

ROSSMAN, J., specially concurring.

I concur in the foregoing opinion with the exception of the parts which hold that a license of the kind involved in this proceeding can not be terminated except by procedure which complies with all of the demands of the due process clause of the Constitution. It is clear to me that this case calls for no expression of views concerning that matter. The parties submit no issue as to whether or not the cancellation of a license requires notice and a hearing. The majority opinion itself says: "We now direct our attention to the only issue presented, namely, the sufficiency of the pleadings." At a later point the majority emphasize that statement by saying: "The only question for our determination relates to the sufficiency of the complaint,".

Section 54-932, O.C.L.A., subdivisions (c) and (d), makes express provision for notice to the accused and a hearing for him as prerequisites to the cancellation of his license. Subdivision (h) even says:

"In any hearings conducted under this section, the accused shall be granted the right to appear in person or by attorney, to introduce testimony in his behalf. He shall also have the right to have witnesses, books, papers and documents subpenaed for him by the board upon due application."

Thus, the statute itself complies with the demands of due process. It is freely conceded that the accused was given notice and was afforded a hearing in which he participated, not merely personally, but also by counsel.

This case is devoid of any issue as to whether or not the cancellation of a license must be effected by procedure which complies with the demands of due process. I think that we ought to withhold an opinion upon that subject until a case is submitted which calls for an expression of our views. The chances are that when a case of that kind is submitted, the issue will be briefed and fully argued.