Argued April 12, affirmed May 17, 1961

# WHITE v. STATE INDUSTRIAL ACCIDENT COMMISSION

362 P. 2d 302

*C. S. Emmons*, Albany, argued the cause for appellant. On the brief were Willis, Kyle & Emmons, Albany.

*Earl M. Preston*, Assistant Attorney General, Eugene, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General of Oregon, Salem.

ROSSMAN, J.

This is an appeal by the plaintiff Doris M. White, from a judgment order of the circuit court which sustained a motion made by the defendant, State Industrial Accident Commission, for the dismissal of this cause which the plaintiff had instituted. When the cause was dismissed nothing had been filed except the complaint and the motion to dismiss.

The complaint alleges as facts the following: The plaintiff is the widow of one Darrell D. White who, prior to his death on May 20, 1958, was an employee of one Benny Masters. The latter was subject to the Workmen's Compensation Law. The plaintiff and her late husband were the parents of two children who are minors. While an employee of Masters the deceased became afflicted with the occupational disease known as lead poisoning and filed a claim for compensation. His claim was allowed by the defendant and he was awarded compensation for temporary total disability from August 9, 1957, to the day of his demise, May 20, 1958. On the day of death the deceased's "claim for compensation was open." The occupational disease of lead poisoning "did in truth and fact hasten the death" of White. The primary cause of death was "carcinoma of the left lung with diffuse metastacis." Following the death, the plaintiff, on behalf of herself

and her children, presented a claim to the defendant for death benefits which the defendant, in an order dated August 19, 1958, denied. September 12, 1958, the plaintiff filed a petition for a rehearing which was denied by operation of law November 11, 1958.

The motion to dismiss stated that "it appears on the face of said complaint that the commission" accepted the deceased's claim "as an occupational disease claim and therefore the Court has no jurisdiction in the above entitled cause." We have mentioned that it was sustained.

The foregoing shows that (1) the plaintiff presented to the defendant a claim for compensation based upon a contention that her husband's death was caused by an occupational disease; (2) the defendant rejected the claim; (3) the plaintiff thereupon presented to the defendant a petition for a rehearing; and (4) upon its denial the plaintiff filed this proceeding. The latter is, therefore, an appeal, of the kind for which ORS 656.286 makes provision, to the circuit court from an order of the defendant. Plaintiff's appeal was dismissed by the order of the circuit court which this appeal challenges. The brief of the plaintiff (appellant) states:

"* * * This appeal was dismissed on the defendant's motion on the theory that the circuit court had no jurisdiction in the matter for the reason that the occupational disease amendments to the Workmen's Compensation Law, as such occupational disease law read at the time the claim of the plaintiff's husband arose, provided that any claimant rejecting a final order by the defendant in any claim under the occupational disease provisions of the compensation law should have his 'appeal' heard by a medical board of review, which board's decision shall be final."

The appellant presents this single assignment of error: "The Court erred in dismissing the plaintiff's appeal."

■ A scatter-gun broadside of that character fails to single out for attack any rule of law or logic which the trial judge employed in reaching his conclusion. It is nothing more than an announcement that the appellant disagrees with the judge. An assignment of error should be specific and place under indictment a step taken by the trial judge on his way to his final ruling which the appellant's brief will oppugn.

Our Workmen's Compensation Law, if we disregard Oregon Laws 1943, Chapter 442, page 662, which gave to us our Occupational Disease Statute, provides that a claimant who is dissatisfied with a ruling made by the defendant pertaining to his claim may appeal to the circuit court and obtain there a trial de novo. ORS 656.288 (3). Our act, unlike that of other states which assign material weight to the findings of the commissioners under a belief that the latter are seasoned experts, ignores upon appeal the commissioners' findings and authorizes a jury trial of all issues of fact, ORS 656.288(3).

But with the enactment of the Occupational Disease Statute the review provisions of our Workmen's Compensation Law authorized a course of a different character in the instances of occupational disease claimants. That statute for the first time made provision so that an occupational disease was compensable under the Workmen's Compensation Law. It provided that an occupational disease should be considered an injury for the workmen of employers who are subject to the Workmen's Compensation Law, and rendered the victim the equal—at least in some respects—of

another workman who had met with an accidental injury. Every victim, whether of an accident or of an occupational disease, must file a claim when he seeks compensation. Section 4 of the Occupational Disease Act enables the victim of an occupational disease, like the prey of an industrial accident, to reject the order which the commission makes upon his claim. But upon rejection of the commission's order the two claims take courses materially different if we deem the pertient part of the Occupational Disease Act as valid.

From this point on we will refer to the provisions of the Occupational Disease Act as they were phrased at the time when the claim in question arose, that is, in 1958. Thus, we will ignore the amendments made in 1959 and our reference will be to ORS (1959-1960). ORS (1959-1960) 656.808 enables the victims of an occupational disease to reject orders made by the commission. We noticed that when the defendant enters an order upon a claim filed by an industrial accident claimant who rejects the order and appeals, the claim becomes the subject matter in the circuit court of a trial de novo, and may even be tried by a jury. From the disposition thus made of the cause in the circuit court an appeal can be taken to this court. ORS 656.292(1). But the claim of a victim of an occupational disease, upon its rejection by the defendant commission, is tried, so far as the features which we will shortly mention expressly, by a "medical board of review" composed of three physicians who possess "expert knowledge of occupational diseases." The findings of the board are "final." ORS 656.814. A medical board of review is appointed each time an occupational disease claimant rejects the final order made upon his claim by the defendant commission.

Its membership is chosen from a list of physicians compiled, under the authority of ORS 656.820, by the Dean of the Medical School of the University of Oregon, the State Health Officer and the State Industrial Accident Commission. The section of our laws just cited specifies, in the words which follow, the qualifications which physicians must possess to be eligible for entry upon the list: "licensed physicians in good professional standing, who may or may not be residents of Oregon and whom the appointing body finds to have acquired expert knowledge of occupational diseases by training and experience."

ORS 656.810 provides that after its appointment the medical board of review "shall have jurisdiction to pass upon and decide every issue involved in such claim."

ORS 656.812 declares:

"(1) The medical board of review shall examine the claimant and all the records of his employment and claim, and from such examination make findings upon all the issues of the claim.

"(2) Such findings, when made, shall be signed by at least two members of the medical board of review and shall contain the answers to the following questions:

"(a) Does claimant suffer from a disease or infection? If so, what?

"(b) When was such disease or infection, if any, contracted, and approximately how long has claimant suffered therefrom?

"(c) Is such disease or infection, if any, peculiar to the industrial process, trade or occupation in which claimant has been last employed?

"(d) Has such disease or infection, if any, been caused by and did it arise out of and in the course of claimant's regular actual employment in such industrial process, trade or occupation?

"(e) Is such disease, if any, disabling to the claimant?

"(f) If so, to what degree is claimant disabled by such occupational disease?

"(3) If the claim is for death benefits under ORS 656.802 to 656.824, the medical board of review shall find on each of the questions in subsection (2) of this section as of a date immediately preceding the employe's death and in addition shall find the cause of death."

ORS 656.814 says:

"The findings of the medical board of review are final and binding and shall be filed with the commission within 60 days after appointment of the third member. A copy thereof shall be mailed to the claimant."

The plaintiff, in arguing that the act denies to an occupational disease claimant due process of law, contends that ORS 656.810 and 656.812 require the medical board to decide the full range of issues, fact and law, presented by the claim of a purported occupational disease claimant such as the question as to whether or not he was in truth a workman as that term is defined by ORS 656.002(15) or whether he was "an independent contractor, partner, joint venturer or employer."

It is true that ORS 656.810 states that the medical board shall "decide every issue" and that ORS 656.812 directs that the board shall "make findings upon all the issues." But the section of the Occupational Disease Act last cited, in authorizing the board to elicit the facts upon which it will act in the discharge of its duty, mentions only the following: "examine the claimant and all the records of his employment and claim." It adds that the information obtained "from

such examination" shall be employed by the board in answering the above six quoted questions.

■ It will be noticed that ORS 656.810, in prescribing the board's duties, employs twice the word "examine." The plaintiff seems to believe that word should be given the meaning which would be appropriate if the act empowered an attorney to conduct an investigation through court procedure. Under such circumstances the attorney would examine and cross examine witnesses. But this act deals with a board of three medical specialists and says that they "shall examine the claimant." Physicians commonly examine people who come to them for medical attention or who seek information concerning their health requested by a life insurance company. In making the examination the physician never resorts to the questioning process employed in court proceedings. He normally prefers the information which the body itself will disclose when examined by tests, X-ray photography and medical instruments. Under such circumstances the physician, of course, in making the examination, listens to the patient and possibly to the latter's spouse or some one else that the patient brings with him. The questions which ORS 656.812 submits to the board are suitable for physicians to answer after they have made an examination of the kind just mentioned. The fact that the Occupational Disease Act does not authorize the board to issue subpoenas, administer oaths, promulgate rules for the government of a hearing and maintain a record of testimony given by witnesses indicates that the act does not contemplate that the board shall conduct hearings of the kind administrative agencies employ.

We think it is clear that an examination of the kind physicians normally conduct is what this act authorizes the medical board to employ. In instances

such as the one before us the board could exhume the body of the deceased workman and examine it if such a course was reasonable under the circumstances. It is unnecessary to cite decisions in support of this belief, but of the many which we have encountered we will mention *Cranston Print Works v. Pascatore*, 72 R I 471, 53 A2d 452, which was a proceeding under the Rhode Island Workmen's Compensation Act. A provision of the act required an injured employee to submit himself to "an examination" by a doctor in order that the nature of his disability might be determined. The decision said:

> "* * * We are of the opinion that in using the term 'examination' in this connection the legislature did intend the ordinary physical examination customarily given by doctors, together with such tests as are reasonably connected therewith and do not involve unnecessary risk to the patient's health. * * *"

We have expressed the belief that the physicians who constitute the medical board are not authorized to conduct a hearing but must obtain the facts upon which they will answer the questions propounded to them by ORS 656.812 from an examination of the kind that physicians normally employ. They should also resort, as directed by ORS 656.812, to "all the records of his employment and claim." The fact that the only information which the act authorizes the board to seek pertains to the health of the workman signifies that it is not expected to resolve all of the issues of the claim but only whether the claimant was afflicted with an occupational disease. There are other reasons for believing that the board is not expected to resolve all of the issues. We will now mention them briefly.

■ The phraseology of ORS 656.810 that the board shall "decide every issue" and of ORS 656.812 that the board shall "make findings upon all the issues" is general. The six questions that are set forth in ORS 656.812 are precise and explicit. If the parts of ORS 656.810 and 656.812 above quoted, upon which the plaintiff relies, must be given the sweeping import that she attributes to them, it is difficult to understand why the legislature phrased the six questions just mentioned. Those questions would be superfluous if ORS 656.810 and 656.812 demand that the medical board must resolve all of the issues of the claim; but if the medical board must resolve all of the issues it is impossible to understand why the legislature reduced to printed form only six questions. If the plaintiff's contentions are well founded the medical board is required to resolve all of the issues, both law and fact, whether or not it is aware of the law issues. Accordingly, it would have much more need for a set of questions based upon the nonmedical issues of whose existence it might be wholly insensible than for a set of questions pertaining to occupational diseases of which each member of the board must have "expert knowledge" (ORS 656.820) in order to be qualified for service upon the board. If we assume that the legislature intended that the medical board should resolve not only the medical issues but also the legal, it would seem illogical for it to have failed to make any provision whatever whereby the board could become apprised of the legal issues. It would likewise seem novel for it to submit the legal issues to a board composed exclusively of physicians.

Upon the surface of things ORS 656.812, which propounds to the medical board the series of specific issues which we have quoted, and ORS 656.810 are not

inconsistent with each other in the sense that one of the sections directly authorizes action which the other forbids; but they are inconsistent if ORS 656.812 limits the jurisdiction of the board to the medical matters which are specified in it and ORS 656.810 contemplates that the board should have jurisdiction to decide not only all of the medical issues but sufficient additional jurisdiction to decide all other issues presented by the claim.

ORS 656.812, as we have seen, enumerates in specific language the questions which the medical board must resolve. All of the questions are suitable for the attention of physicians. All of them are exact, specific and precise.

In situations of this character the courts frequently find aid in two rules of statutory construction which we will now mention. One is termed the maxim noscitur a sociis. Under that maxim general words, found in a statute, may take the color and meaning of associated words of specific connotation. The maxim invites the court's attention to the entire context and not to one passage only. The other rule is the doctrine of ejusdem generis. It holds that when general words are closely allied in a statute with others that designate particular persons or things the general words must be limited in their application to persons and things of the same nature as the specific. Both rules are well established and both have been employed by this court so many times that it is unnecessary to cite precedents. See, however, the part of ORS 174.020 which reads:

"* * * and when a general and particular provision are inconsistent, the latter is paramount to the former. * * *"

When we give effect to the two rules of statutory construction just mentioned and to the fact that the

jurisdiction of the medical board is confined to an examination of the claimant and to the records of his employment and claim we deem it manifest that the specific words which constitute the questions submitted by ORS 656.812 control over the general language upon which the plaintiff relies. The board's duties and jurisdiction, in our opinion, are limited to an examination of the claimant and to the matter of answering the questions propounded to it by ORS 656.812.

The plaintiff appellant's brief, after taking note of the fact that ORS 656.812 provides that "The medical board of review shall examine the claimant and all the records of his employment and claim," states:

"Now just what could the medical board examine? Could it go to an employer's plant and take testimony 'off the record,' hearsay or otherwise, and make a final and binding decision as to that workman's rights? This seems to be what the statute provides."

The brief shortly continues:

"It would appear that a workman with an occupational disease suffered as a result of his employment with or without the negligence of any person being the cause thereof is relegated to rather summary, possibly secret, and certainly nonjudicial determination of his rights."

■ We see from the assertions made by the plaintiff that she fears that the medical board might resort to the employer's plant as the place for conducting the examination. Davis, Administrative Law Treatise, § 8.08, declares:

"An agency ordinarily has broad discretion to fix the place of hearing, and courts have usually rejected contentions that discretion has been abused."

Section 5(a) of the Federal Administrative Procedure Act provides:

> "In fixing the times and places for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives."

That rule is nothing more than the printed form of a well established practice. Not only do courts and administrative agencies commonly employ it, but good breeding never fails to observe it. In *Tractor Training Service v. Federal Trade Commission*, 227 F2d 420 (cert den 350 US 1005, 76 S Ct 649, 100 L Ed 867) which had its inception in this state, the court approved the action of the Federal Trade Commission in moving hearings throughout the plaintiff's sales territory in order to avoid the "necessity of transporting all the witnesses from their scattered residences to any one hearing place." Accordingly, the medical board has discretion which enables it to select the most suitable place for making the examination. It should act no differently than if its members were engaged in private practice.

The plaintiff's contention that the medical board may base its findings upon hearsay evidence encounters the difficulty that the board has no jurisdiction to examine or cross examine witnesses. The board does not conduct a hearing but makes an inspection, test or examination. Its members, in conducting the inspection or examination, act no differently than they would if they were engaged in private practice.

■ The plaintiff declares that an examination for the purpose of determining whether a claimant is afflicted with an occupational disease may assume the form of a "nonjudicial determination of his rights."

Obviously, the claimant will always be present during the examination or inspection for he is the individual who will be examined except in an instance such as the present one where he has deceased. Moreover, ORS 183.420 says:

> "In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. The notice shall state the time, place and issues involved * * *."

Although we cited the measure from which we just quoted, the medical board does not conduct a hearing, and accordingly receives no testimony, hearsay or otherwise. Courts and juries not infrequently give effect to the facts disclosed by a physician's examination of a party. The highly regarded Final Report of the Attorney General's Committee on Administrative Procedure (1941), pages 37-38, says:

> "* * * The surest way to ascertain what is the grade of grain is for a skilled inspector to test it; the best way to discover whether the radio equipment of a ship is in proper working order is for a radio mechanic to examine it and test it.
>
> "The soundest procedure in cases of this type is that which recognizes the reality that the inspection or test is and must be the decisive element. * * *"

We take the following from Davis, Administrative Law Treatise, § 7.09:

> "In some circumstances hearings are inferior to inspection, examination or testing. The way to ascertain airworthiness of an airplane or seaworthiness of a vessel or safe condition of a locomotive is for a skilled inspector to look at the object and make his decision. And the same is true of inspecting perishable commodities, quarantining plants, determining the skill of applicants for vari-

ous kinds of licenses, ascertaining the physical condition of an individual, censoring motion pictures."

*National Labor Relations Board v. Mackay Radio & Telegraph Co.*, 304 US 333, 58 S Ct 904, 82 L Ed 1381, in an opinion written by Mr. Justice Roberts, ruled: "The Fifth Amendment guarantees no particular form of procedure; it protects substantial rights."

We believe that *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 US 134, 60 S Ct 437, 84 L Ed 656, is opposed to the plaintiff's position. In *In re Buck's License*, 192 Or 66, 232 P2d 791, 200 Or 488, 258 P2d 124 (appeal dismissed 346 US 919, 74 S Ct 313, 98 L Ed 414) this court held that in proceedings before a medical board (licensing) the rules of pleadings that are employed in judicial proceedings need not be followed. The words of the decision are: "strict rules of pleading need not be followed, and * * * the essential requirement is that the charge shall be described with reasonable certainty."

*Gray Well Drilling Co. v. Wisconsin State Board of Health*, 263 Wis 417, 58 NW2d 64, states:

"* * * The functions of administrative agencies and courts are so different that the rules governing judicial proceedings are not ordinarily applicable to administrative agencies, unless made so by statute. It is not the province of courts to prescribe rules of procedure for administrative bodies, as that function belongs to the legislature. The legislature may either prescribe rules for pleadings and procedure before such bodies, or it may authorize the administrative board or agency to prescribe its own rules. * * *"

Obviously the board must examine the claimant, consider the documents mentioned in ORS 656.812 and

comply with all other duties imposed upon it by the Occupational Disease Act, but when it has done so it has discharged its full duty.

■ The plaintiff challenges the act as violative of Oregon Constitution, Article I, § 20, which says:

"No law shall be passed granting to any citizen nor class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Classification if arbitrary or capricious can not be sustained. Classification must be based upon reason and natural differences between the things or persons that are cast into the challenged classification.

One who claims that he is afflicted with an occupational disease has undergone experiences substantially different from those of another workman who is the victim of an industrial accident. An occupational disease is stealthy and steals upon its victim when he is unaware of its presence and approach. Accordingly, he can not later tell the day, month or possibly even the year when the insidious disease made its intrusion into his body. Although his weakened condition may manifest ill health its cause may be uncertain and puzzle even the most skillful of physicians. Upon the other hand, the victim of an industrial accident virtually always can tell the day and even the hour when the purported injury befell him. He does not attribute his present condition to something that crept in upon him unobserved but to an accident which he and possibly many others observed. Under those circumstances we can not say that the legislature acted arbitrarily or capriciously when it made provision that an occupational disease claimant, who is dissatisfied with the rulings of the Industrial Accident Commission, should

go before a medical board without also providing that an industrial accident claimant should be treated in the same manner. Very likely the legislature believed that a board of three physicians, experienced in occupational diseases and authorized to examine the claimant, would bring forth a superior diagnosis than a jury of laymen who could do nothing more than listen to testimony.

The contention made by the plaintiff that the act constitutes invalid class legislation has been many times voiced in the courts, but has always been rejected. For example, we quote the following from the decision announced in 1923 in *Hoyt Metal Co. v. Atwood*, 289 F 453:

"Liability under the Occupational Disease Act is denied because of its alleged unconstitutionality. To quote defendant's position:

" 'Two persons working for the same master in the same place, doing the same kind of work are given unequal advantages upon the sole distinction of how the injury came about. Under section 15, if it is classed as an occupational disease he may resort to a court of law; have a trial by jury; and recover damages in any amount that a jury may see fit to give and the court approve. Another receiving the same kind of an injury at the same kind of work, but receiving it through an accident cannot resort to a court of law; he cannot have a trial by jury, he cannot recover unlimited damages. * * * This sort of classification, we believe, is not sustainable as any just, reasonable or fair classification.'

"Discussion is unnecessary. The decisions are to the contrary. Labanoski v. Hoyt Metal Co., 292 Ill. 218, 126 N.E. 548; M. & H. Zinc Co. v. Industrial Com., 284 Ill. 378, 120 N.E. 249; Zajkowski v. American Steel & Wire Co., 258 Fed. 9, 169 C.C.A. 147, 6 A.L.R. 348; Adams v. Acme White Lead & Color

Works, 182 Mich. 157, 148 N.W. 485, L.R.A. 1916A, 283, Ann. Cas. 1916D, 689; Miller v. American Steel & Wire Co., 90 Conn. 349, 97 Atl. 345, L.R.A. 1916E, 510; Second Employers' Liability Cases, 223 U.S. 1, 32 Sup. Ct. 169, 56 L.Ed. 327, 38 L.R.A. (N.S.) 44."

Decisions that are more recent than the one from which we just quoted are in accord with it. We are satisfied that the Occupational Disease Act does not conflict with Constitution of Oregon, Article I, § 20; nor with the provisions for "due course of law" set forth in Constitution of Oregon, Article I, § 10.

The plaintiff challenges the validity of the Occupational Disease Act because ORS 656.814 says that:

"The findings of the medical board of review are final and binding."

No contention is made that a claimant is denied an adequate hearing before the Industrial Accident Commission. The Workmen's Compensation Act through ORS 656.282(1), in referring to a defendant, says: "The commission may hear and determine all questions within its jurisdiction."

As we have said, the medical board resolves nothing but issues of fact. Accordingly, ORS 656.814 merely renders its findings upon the fact issue final and binding. We take the following from 73 CJS, Public Administrative Bodies and Procedure, § 161:

"No rule of constitutional law requires that all administrative acts be subject to judicial review, nor is there any necessity for an appeal on questions of fact * * *."

Section 162 of the same treatise states:

"* * * and it is within the power of the legislature to provide that findings of fact shall be con-

clusive without a review thereof by a court or jury * * * ."

According to 42 Am Jur, Public Administrative Law, § 137, page 479:

"One adequate hearing is all that due process requires. Rehearings or appeals are not essential in all cases to due process of law. Where a hearing is had for the determination of a particular matter, another hearing is not essential to a determination which flows as a legal incident from the first."

In accord with the statements just quoted we cite *Inland Navigation Co. v. Chambers*, 202 Or 339, 350, 272 P2d 104, and cases it mentions. See also, in accord, *State ex rel McBride v. Superior Court*, 103 Wash 409, 174 P 973; *Saclarides v. Shaughnessy*, 180 F2d 687; *State ex rel Jonak v. Beall*, 136 Ohio 213, 24 NE2d 826.

■ We do not believe that it was necessary to provide for an appeal from the results of the examination made by the medical board. Its findings are accorded the effect of a jury's verdict. In fact, such an appeal, if any effect at all was to be attributed to the expert character of examiners, would be impossible.

There remains for consideration the question as to whether a claimant may have a review by the circuit court of any ruling made by the defendant commission upon any issue except the fact issues which are resolved by the medical board when it answers the questions submitted to it by ORS 656.812.

■ The Occupational Disease Act is not independent of the Workmen's Compensation Act but is complementary or supplementary thereto. ORS 656.804(1) so recognizes. The Occupational Disease Act enlarges the scope of the injuries and health impairment for which the defendant may grant compensation.

A claimant under the Workmen's Compensation Act who deems himself aggrieved by action taken by the defendant and whose petition for a rehearing has been denied may appeal to the circuit court. ORS 656.286 and 656.288. We have noticed that the latter section says that upon appeal "the case thereafter shall proceed as other civil cases in the court," and adds, "provided, that either party thereto may demand a jury trial upon any question of fact."

Neither the Occupational Disease Act nor any other measure makes express repeal of any provision of the Workmen's Compensation Act. The word "repeal" does not occur anywhere in the act nor can any synonym for it be found in the Occupational Disease Act. The part of the latter act which submits to the medical board the issues that are expressed in the questions set forth in ORS 656.812 and which enjoins that the board's resolve of those issues "shall be final and binding" are plainly irreconcilable with ORS 656.288 of which we have taken notice and which says that upon appeal the case shall "proceed as other civil cases" and that either party "may demand a jury trial upon any question of fact."

■ Without expressly so stating the parties to this case apparently deem that ORS 656.812, which assigns to the medical board the duty of making answer to the questions propounded in that section, and ORS 656.814, which says that the board's answers to those questions "are final and binding," repeal by implication the parts of ORS 656.288 which would otherwise authorize a jury trial of those specific issues of fact. We share that view and believe that ORS 656.812 and 656.814 repeal the parts of ORS 656.286 and 656.288 which would otherwise render available a trial by jury of the issues mentioned in ORS 656.812.

Although we take the view just mentioned, that does not mean that an occupational disease claimant who is dissatisfied with action taken by the defendant may not appeal to the circuit court if his appeal does not concern the issues that are suggested by ORS 656.812. It may be that in a case of this kind the Industrial Accident Commission ruled that the claimant was not a workman or ruled against him for some reason other than those mentioned in ORS 656.812. If a situation of that kind occurs, we are aware of no reason for believing that the legislature intended that the claimant should have no right of appeal. We think that in such situations the right to appeal to the circuit court remains unimpaired.

So far, in referring to the Occupational Disease Statute, we have not mentioned the amendments made in 1959. We shall now refer to a section thus amended. Section 656.810 says:

"In every case of the rejection of a final order of the commission under ORS 656.808, involving the issues enumerated in ORS 656.812, there shall be appointed a medical board of review, which board of review shall have jurisdiction to pass upon and decide such issues."

It follows from the language of the amendatory act just quoted that the medical board passes upon nothing but the questions propounded by ORS 656.812. ORS 656.810(3) provides:

"In any case involving an issue of timeliness of filing a claim or other legal issue not to be determined by the medical board of review, the commission shall within 30 days of the filing of claimant's rejection certify the claim record to the circuit court * * *; and the issue shall be determined by the court without jury * * *."

Without taking note of other sections of the amended

act we think that it is apparent that the amendments are in harmony with the construction that we placed upon the original act. An amendment to an ambiguous act may be considered in determining the meaning of the ambiguous language. 82 CJS, Statutes, § 384, at page 899, says:

"An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended, as where the act amended is ambiguous."

*Layman v. State Unemployment Compensation Commission*, 167 Or 379, 117 P2d 974, through the pen of Mr. Justice LUSK, declared:

"There are other changes in the section, but they are not pertinent to the present discussion and need not be noticed. An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended. 25 R.C.L., Statutes, 1064, § 288; In re Hurle, 217 Mass. 223, 104 N.E. 336, Ann. Cas. 1915 C 919, L.R.A. 1916 A, 279. The amendment in question might almost be regarded as a legislative declaration of the meaning of § 7. In substance the legislature has said that until 1942 cessation of operation is essential to a determination of seasonality; but thereafter reduction of employment to the extent prescribed will suffice; and that these are not one and the same thing."

It is conceded that the plaintiff in this case appealed to the circuit court. The complaint in the case now before us, referring to the deceased, Darrell D. White, says that he "contracted an occupational disease arising out of and in the course of his employment under the Workmen's Compensation Law of Oregon * * * being known as lead poisoning." Shortly it adds:

"* * * the occupational disease for which the said compensation claim was allowed and by reason

of which the said Darrell D. White was on temporary total disability status with the defendant did in truth and fact hasten the death of the said Darrell D. White * * *."

It is nowhere alleged that the defendant made any ruling upon an issue of law or of fact upon which the plaintiff sought a review from the circuit court except the question pertaining to the occupational disease. It necessarily follows that the issue concerning the occupational disease was for the medical board. The circuit court, therefore, did not err when it entered the order of dismissal.

The challenged order is affirmed.