GEORGE H. HANDY, M.D., State Health Officer Department ofHealth and Social Services
You advise that at the present time in Wisconsin there continue to be outbreaks of diseases which are preventable by immunization. *Page 5 
In order to prevent future outbreaks of such diseases, you desire to identify those persons who are unimmunized, and to provide them with voluntary immunizations as recommended by the Department of Health and Social Services.
To facilitate identification of inadequately immunized persons, a pilot project designed to explore the feasibility of an immunization data system has been established in Green County. You have officially requested physicians there to provide immunization information from their records to public health authorities to implement the pilot project.
Since you believe that it is not feasible to attempt to obtain a signed release from each patient, or his parent or guardian, you have requested that the information be provided without attempting to obtain consent, in the same manner as information concerning patients' communicable diseases currently is provided. You have instructed that the data are to be handled carefully, in the same confidential manner as other personal information used for public health purposes.
The State Medical Society of Wisconsin is concerned, however, that physicians who comply with your request risk violating rules respecting the confidential nature of the relationship between physician and patient. You ask, therefore, whether rules respecting physician-patient confidentiality are breached by a doctor's disclosing to public health authorities information about the immunization status of his patients, as reflected in his records, without specific permission of the patients.
I have concluded that, in the circumstances you describe which cause you to seek such information, the rules of confidentiality would not be broken by disclosure.
Substantive principles of professional medical conduct prohibit willful betrayal of a professional secret. Sec. 448.18 (1) (d), Stats. In a recent opinion, I determined that these statutorily expressed principles should be construed in conjunction with the American Medical Association's Principles of Medical Ethics
(1957) to include within the scope of "professional secrets" confidences entrusted to a physician in the course of medical attendance. 64 OAG 82 (1975). That opinion was concerned in particular with confidential communications made by a patient to a physician. For the reasons set forth below, I conclude that *Page 6 
information about a patient's immunization status is not a professional secret within the protection of the law.
There are few cases treating the subject of what constitutes willful betrayal of a professional secret. In McPheeters v. Boardof Medical Examiners of State of California (1930),103 Cal. App. 297, 284 P. 938, the court examined a statutory prohibition nearly identical to sec. 448.18 (1) (d), Stats., declaring the willful betrayal of a professional secret to be unprofessional conduct. The court held that the phrase "willful betrayal of a professional secret" does not apply to any and all disclosures that a doctor may intentionally make, but only to disclosures which would tend to disgrace, embarrass, or incriminate a patient, and which are made with an intent to so injure. Thus, a disclosure of a harmless nature or one made without intent to cause harm is not a breach of the physician-patient relationship.
A patient's immunization status, appears to be just such a harmless disclosure as not to fall within the ban of our statute against willfully betraying a professional secret. As a practical matter there is no disgrace or social stigma attaching to a patient's immunization status. Most children are routinely administered the oral polio vaccine at school. Many adults carry a prominent scar showing that they have been immunized against small pox.
There is nothing about an immunization status that requires secrecy, regardless of the fact that lt may appear in a physician's records. In fact, entities other than a patient's private physician, such as schools, may retain records of immunization. In addition, a physician's disclosure of immunization status of his patients for the purpose of aiding the department in its efforts to control outbreaks of disease is a disclosure intended to help patients generally, not harm them.
The rationale behind the privilege in the analogous testimonial rule now found in sec. 905.04, Stats., Wisconsin Rules of Evidence, bears a direct relationship to the rules respecting physician-patient confidentiality. The purpose behind the prohibition of a physician's revealing of professional confidences is to protect a patient from humiliation, shame, or disgrace and to insure full disclosure to the physician of all diseases and personal habits so that he may treat the patient properly. Prudential Insurance Co. v. Kozlowski (1938), 226 Wis. 641. 276 N.W. 300. See also *Page 7 Kirkpatrick v. Milks (1950), 257 Wis. 549, 44 N.W.2d 574. This rationale is clearly inapplicable to a patient's immunization status. It is not a disease or habit, disclosure of which would injure a patient's feelings or reputation. Furthermore, it is unlikely that a patient would refrain from disclosing his immunization status to his doctor in the absence of a guarantee of privacy about the matter.
An examination of the principles of confidentiality expressed in the American Medical Association's Principles of MedicalEthics (1957) also supports the conclusion that disclosure of immunization information would not violate rules of confidentiality. Section 9 prohibits a physician from revealing the "confidences entrusted to him in the course of medical attendance or the deficiencies he may observe in the character of patients," unless the law or medical necessity requires it. Immunization status is not a deficiency of character, nor is it of such a confidential nature that a physician should be barred from disclosing it. In 97 C.J.S. Witnesses, sec. 296, p. 838, it is stated that "a communication to a doctor is confidential when it is acquired by the doctor as a result of confidence reposed in him as such by the patient." Further, the testimonial privilege statute, sec. 905.04 (1) (c), Stats., defines a confidential communication as one "not intended to be disclosed to third persons." Under either of these tests, a record of a patient's immunization status fails to qualify as a confidential matter. Individuals commonly have no expectation of privacy regarding their immunization status. In fact, immunization is often administered in public settings, such as schools and public health clinics.
Section 140.05 (1), Stats., provides that the Department of Health and Social Services "shall have power to execute what is reasonable and necessary for the prevention and suppression of disease." In considering whether the means you propose to prevent outbreaks of disease are "reasonable and necessary," it is helpful to note the existence of statutes requiring disclosure of medical information. Section 143.04, Stats., for example, requires a physician to notify public health authorities of all cases of communicable diseases which come to his attention. In so reporting, a physician is required to disclose the name and disease of the sick person, as well as other identifying information about the patient. Furthermore, under ch. 39, sec. 624, Laws of 1975 *Page 8 
(recreating sec. 140.05 (16), Stats.), children are required to present evidence of immunization against communicable diseases or signed permission to administer needed vaccines in public clinics before entering school. Given these statutory authorizations for disclosure of information regarding contagious diseases and regarding immunization, disclosure by physicians of the immunization status of their patients is an appropriate means of preventing or suppressing disease. Moreover, if safeguards are desirable, they are effected by the fact that the data reported to the department will be treated in a confidential manner, as is other personal information used for public health purposes.
It appears that under sec. 140.05, Stats., the department has authority to promulgate a rule to require the disclosure desired. Since the program is now only in its pilot stage, exercise of the rule-making power at this point may be premature. However, at any time when the pilot program should develop into a state-wide system, it may be the better practice for the department to promulgate such a rule. This would not only be consistent with department practice generally, but would also tend to ensure uniform application of the disclosure requirement throughout the state.
BCL:DJH